*424 OPINION OF THE COURT
Wesley, J.
For over 60 years, this Court has held that a cause of action in a toxic exposure case accrues upon initial exposure to the toxic substance. While the Legislature has chosen to temper the effect of this rule through the adoption of a discovery statute for certain toxic torts (see, CPLR 214-c), that statute did not change this Court’s basic definition of injury for Statute of Limitations purposes.
In this case, plaintiff, the owner of a Manhattan building, seeks damages for the cost of performing abatement work on asbestos fireproofing that was installed when the building was constructed. Consistent with our long line of precedents, we hold that, for Statute of Limitations purposes, plaintiffs injury occurred when the asbestos-containing material was installed. Plaintiffs cause of action was therefore properly dismissed by the Appellate Division.
Plaintiff MRI Broadway Rental, Inc. (MRI) is the owner of an office building at 1633 Broadway in New York City. Construction of the building was completed in 1971. Asbestos-containing materials, particularly fireproofing and insulation, were used throughout. MRI purchased the building from a consortium of banks in 1976, at which time, and continuing to the present day, Paramount Group, Inc. (PGI) was retained to *425 act as the managing agent. While PGI denied having any specific knowledge at the time that asbestos fireproofing had been used in the building, there was growing general awareness that many New York City office buildings had asbestos problems. The dangers inherent in products utilizing friable asbestos,* and its extensive use in City buildings, were the subject of numerous news reports dating back to the mid 1970’s and continuing into the 1980’s.
In fact, the dangers inherent in asbestos-containing materials were specifically brought to PGI’s attention at least as early as 1970, when the New York City Department of Air Resources obtained an injunction against the spraying of asbestos insulation at another building managed by PGI. That same building was the subject of a study that began in 1973 by the Environmental Protection Agency on the hazardous effects of friable asbestos fireproofing. The report on the study was released in 1975 and concluded that there was “strong evidence for the erosion of fibers in some buildings fireproofed with fibrous-type, dry-spray, asbestos-containing material” and recommended that steps be taken to avoid asbestos contamination in such buildings.
In 1983, plaintiff retained an environmental consultant to assess the condition of the asbestos fireproofing in the building at issue. At about the same time, tenants began expressing concern over the potential dangers associated with asbestos. By late 1986 and continuing into early 1987, plaintiff undertook substantial asbestos abatement work on several floors of the building, in response to the tenant complaints. PGI also retained environmental consultants to conduct air monitoring in the building, in order to comply with Local Laws, 1985, No. 76 of the City of New York, effective April 1, 1987, which established procedures for asbestos abatement in connection with the renovation or demolition of asbestos-containing properties.
Plaintiff commenced this action against defendant asbestos manufacturer on August 28, 1990. Plaintiffs complaint alleges that asbestos fibers had continuously and repeatedly caused physical damage to the building. Plaintiff sought damages for the costs of “detecting, containing, preparing, renovating and/or *426 removing asbestos from its building,” as well as the loss of use, rental, ¿nd commercial value of the building. By order dated March 19, 1996, Supreme Court denied defendant’s motion for summary judgment seeking dismissal of most of plaintiffs causes of action on Statute of Limitations grounds. The trial court accepted plaintiffs argument that the Statute of Limitations did not begin to run until friable asbestos particles in the air caused actual physical damage to the building. It held that the mere presence of asbestos in the building, or the general knowledge that such material can be harmful was insufficient to trigger the limitations period.
The Appellate Division reversed, and granted defendant summary judgment on plaintiffs causes of action sounding in negligence, products liability, restitution, indemnification and prima facie tort. The court noted that this action was substantively identical to a previous action that was dismissed on Statute of Limitations grounds that involved a different building managed by PGI (see, 888 7th Ave. Assocs. Ltd. Partnership v AAER Sprayed Insulations, 199 AD2d 50, lv denied in part and dismissed in part 84 NY2d 841). The Appellate Division held that the injury of which plaintiff complained was the presence of asbestos and the need to abate it. The court further held that plaintiffs causes of action accrued prior to August 28, 1987 (the three year cutoff date based upon the commencement date of August 28, 1990). The court rejected plaintiffs theory that the cause of action did not accrue until the building was “contaminated” — i.e., that the building had levels of friable asbestos in excess of regulatory standards. The court noted that plaintiffs own expert had averred that the date of contamination was “unknown and unknowable” and reasoned that basing an accrual rule on an unascertainable moment would be a poor jurisprudential choice. That same court granted plaintiffs application for leave to appeal, and we now affirm.
What constitutes an injury for Statute of Limitations purposes has long been a difficult concept as applied to toxic tort cases. In Schmidt v Merchants Desp. Transp. Co. (270 NY 287), this Court held that a cause of action arising out of an illness caused by inhalation of toxic dust accrues on the date the plaintiff is exposed to the dust — i.e., on the date plaintiff inhales it. In an effort to reconcile the Schmidt holding with the common understanding of “injury” the Court reasoned that initial inhalation causes actual physical damage to the body, which leads inexorably to the ultimate condition of which *427 plaintiff complains, even though that condition may not fully manifest itself until many years later. As the Court later explained in Schwartz v Heyden Newport Chem. Corp., “we must assume that the dust immediately acted upon Schmidt’s lung tissue” (12 NY2d 212, 217, cert denied 374 US 808).
In Consorti v Owens-Coming Fiberglas Corp. (86 NY2d 449), the Court acknowledged that the Schmidt actual physical damage rationale may have been flawed. Consorti nevertheless reaffirmed the result in Schmidt and Schwartz, noting that the rejection of a fact-based date of medical injury test
“was made for practical and policy reasons articulated in the developing case law, that is, the need to provide manufacturers, employers and other economic actors who are potential defendants with a degree of certainty or predictability in assessing the risk of liability and to avoid stale claims which often turn on questions of credibility or disputed medical judgments. Therefore, a bright line, readily verifiable rule was adopted in which, as a matter of law, the tortious injury is deemed to have occurred upon the introduction of the toxic substance into the body” (supra, 86 NY2d, at 451-452).
These same policy considerations point toward adoption of a bright line accrual rule based upon introduction of the toxic substance in the building rather than a difficult-to-define, transmutable and unquantifiable contamination standard.
Perhaps the closest analog to this case among our precedents is Snyder v Town Insulation (81 NY2d 429). The plaintiffs in Snyder sought recovery for damages sustained as a result of ureaformaldehyde emissions from foam insulation installed in their home. Notably, the plaintiffs in Snyder acknowledged that the exposure to formaldehyde gas had begun on or about the date of installation. We held that plaintiffs’ claims accrued on the date on which the insulation was installed. Similarly, plaintiff here has acknowledged that there has been a continuous release of asbestos fibers from the date of installation of these asbestos-containing materials.
In Maryland Cas. Co. v Grace & Co. (23 F3d 617) the Second Circuit, applying New York law, held that, in an asbestos property damage claim, the “trigger date” for insurance coverage purposes is the date of installation, for it is at that point that the building owner sustains an injury in fact. This Court reached a similar conclusion in Sturges Mfg. Co. v Utica Mut. *428 Ins. Co. (37 NY2d 69, 72-73), holding that “[w]hen one product is integrated into a larger entity, and the component product proves defective” the larger entity has sustained an injury in fact. When asbestos is installed, there is an actual injury to the property, since “[t]he damage that building owners are seeking to ‘undo’ is not the fact that they discovered asbestos, but the fact of its incorporation in their buildings” (Maryland Cas. Co. v Grace & Co., supra, 23 F3d, at 627). We find this reasoning persuasive and in line with our Statute of Limitations jurisprudence.
Notwithstanding our long line of precedent pointing toward installation as the accrual date in this case, plaintiff claims that it did not sustain actual injury until friable asbestos “contaminated” the building. Plaintiff would have us define contamination in terms of a level of friable asbestos in the air in excess of OSHA standards. However, there are myriad problems with this rule. Plaintiff’s own expert admitted that the date of contamination is unknown and unknowable in this case. In keeping with the important purposes of avoiding stale claims and providing defendants with a degree of certainty and predictability in risk assessment, our precedents have rejected accrual dates which cannot be ascertained with any degree of certainty, in favor of a bright line approach (see, Blanco v American Tel. & Tel. Co., 90 NY2d 757, 771-772). These same policies militate against basing an accrual date upon the ever-changing determinations of a regulatory body and an event that even plaintiff’s expert cannot identify. Under plaintiff’s theory, what is not an injury today may become an injury tomorrow based not upon any additional level of friable asbestos in the air, but based simply upon the promulgation of newer, more stringent government standards. Our precedents offer no basis for such a result.
Moreover, the injuries for which plaintiff claims damages are not entirely related to the friability of the asbestos, but for the most part relate simply to the presence of asbestos in the building. By plaintiff’s own admission, the level of friable asbestos in the building does not now exceed OSHA standards. Nevertheless, plaintiff claims damages for the cost of abatement, as well as loss of use and value of the building. These damages have no relation to the actual presence of friable asbestos in the air, but rather occurred when the public in general, and the government in particular, became aware of the potential dangers of asbestos-containing buildings. As plaintiff’s conduct in undertaking substantial asbestos-abatement work in 1986 *429 and early 1987 indicates, its damages were sustained at least months, if not years, before the August 28, 1987 date which serves as the cutoff of all claims in this case.
Plaintiff also contends that, even if it was injured within the meaning of CPLR 214 prior to August 28, 1987, it did not discover the injury until later, and thus CPLR 214-c serves to revive its claim. Section 214-c provides that the Statute of Limitations for damages to property caused by the “latent effects of exposure to any substance or combination of substances * * * within property” is three years “from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered” (CPLR 214-c [2]). Assuming arguendo that CPLR 214-c is applicable to the type of injuries that plaintiff claims, section 214-c (6) (b) renders it inapplicable here. For purposes of CPLR 214-c, discovery occurs when, based upon an objective level of awareness of the dangers and consequences of the particular substance, “the injured party discovers the primary condition on which the claim is based” (Matter of New York County DES Litig., 89 NY2d 506, 509, 514-515).
However, under CPLR 214-c (6) (b), the discovery statute does not apply where the injury “either was discovered or through the exercise of reasonable diligence should have been discovered prior to” July 1, 1986. In this case, the primary condition on which the claim is based is the presence of asbestos in the building. It cannot be contested that plaintiff was or should have been aware of this condition prior to July 1, 1986, and that there was widespread public awareness of the dangers of asbestos well before that date. Thus, plaintiff’s claim does not fall within the savings provision of the discovery statute.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Ciparick concur.
Order affirmed, etc.

 Federal regulations define “friable asbestos material” as “any material containing more than 1 percent asbestos by weight which, when dry, may be crumbled, pulverized, or reduced to powder by hand pressure.” (40 CFR 763.121 [b].)