OPINION OF THE COURT
Paul A. Victor, J.
Relief Sought
The present action represents eight consolidated actions. Each of the plaintiffs is or has been a New York City police officer who alleges that he suffered hearing loss from a discrete episode and/or as a result of exposure to the noise of gunfire during firearms training, and that the noise protection devices provided to the officers were defective.
Defendant City of New York moves pursuant to CPLR 3211 and 3212 for summary judgment dismissing the complaints herein on the grounds that: (1) the claims are untimely, (2) the safety equipment provided was adequate, and (3) the City’s choice of safety equipment was a discretionary, governmental act, and thus immune from liability.
Defendant Mine Safety Appliance Company similarly moves (by separate motions) for summary judgment dismissing the complaints of all plaintiffs, contending: (1) that the plaintiffs’ actions are time-barred; (2) that the failure to preserve the actual hearing protectors constitutes spoliation warranting dismissal of the actions; (3) that the plaintiffs have not established that defendant Mine manufactured the specific safety devices used by them; (4) that plaintiffs cannot establish a prima facie case in products liability; and (5) that the complaint of plaintiff Carroll should be dismissed for failure to prosecute, and the complaint of plaintiff Hernandez should be dismissed based on estoppel.
Issues Raised
The issues presented by these actions, which have been commenced by eight police officers (each of whom claim a hearing injury as a result of negligent exposure to gunshot noise), are troubling, especially since they may require determinations which may be inconsistent and unfair.
*434 Despite a remedial amendment to the CPLR (CPLR 214-c, as added by L 1986, ch 682, § 2, as amended by L 1992, ch 551, § 1 [which attempted to abrogate judicial determinations which imposed harsh time bars to actions,based upon injury caused by the long-term latent effect of exposure to “toxic substances”]) and subsequent “bright line” decisions interpreting this legislation, the lines of demarcation are still not lucid; and, in this court’s opinion, the issues presented herein are still open and unresolved.
CPLR 214-c provides in relevant part:
“Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury . . . caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body . . . must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.” (CPLR 214-c [2] [emphasis added].)
It should be noted that the above CPLR provision provides no further definition for the word “substance,” and the Court of Appeals has held that the statute only applies to toxic substances (Blanco v American Tel. & Tel. Co., 90 NY2d 757 [1997], modfg 223 AD2d 156 [1st Dept 1996]). Although normal sound is benign and therefore not encompassed by CPLR 214-c (according to Blanco), can “sound” nevertheless be considered a “substance,” and if so, should a “toxic quantity” of such harmful sound be considered within the purview of the remedial CPLR amendment? If CPLR 214-c is held not to apply to toxic sound, should the negligent infliction of repetitive stress on the eardrum caused by toxic sound, come within the exception created by the Court of Appeals in Blanco (supra) for repetitive stress injuries? (See contra, Martzloff v City of New York, 238 AD2d 115 [1st Dept 1997], lv dismissed 90 NY2d 935 [1997]; Casson v City of New York, 269 AD2d 285 [1st Dept 2000].) Based upon the lack of sufficient expert testing and the underdeveloped circumstances in this case, the court declines to follow Martzloff and Casson (supra) at this time.
Facts and Legal Argument
Three of the eight officers allege a discrete episode within the applicable limitations period; one officer alleges a discrete *435 episode within the limitations period, which “exacerbated” a prior hearing loss resulting from long time exposure to firearm noise occurring outside the limitations period; and the remaining officers claim that they gradually became aware of hearing loss over the course of many years of firing range practice.
It is undisputed that defendant Mine supplied the “Noisefoe Mark IV” to the New York City Police Department for use as safety equipment against ear injury at firing ranges between 1982 and 1989. The hearing protectors supplied by Mine had a noise reduction rating of 23, meaning that based on continuous noise, the use of the hearing protector would reduce noise levels by 23 decibels. The plaintiffs contend that the “Noisefoe Mark IV” was inadequate.
Each of the individual police officers contends that he suffered hearing loss as a result of exposure to the noise of gunfire at New York City Police Department firing ranges. Each plaintiff generally underwent firearms training twice each year. Some of the plaintiffs assert that they are unable to pinpoint an exact time or incident which allegedly resulted in a loss of hearing. For example, plaintiff Pepitone claims he sustained a gradual hearing loss after an unspecified discrete incident. Pepitone’s complaint alleges that between the years 1973 and 1992, plaintiff was regularly exposed to the sound of gunfire. On March 23, 1991, plaintiff served a notice of claim for an alleged hearing loss resulting from exposure to gunfire noise. With respect to defendant Mine, Pepitone’s complaint alleges that Mine knew that its “Noisefoe Mark IV Ear Muffs” (the hearing protectors sold to the City for use at firing ranges) did not provide adequate safety from the sound of gunfire. In his examination before trial (EBT) testimony, plaintiff Pepitone testified that his ear “popped” at some unspecified time after being at the firing range; that his hearing loss was gradual; and that he did not ascribe the hearing loss to exposure to gunfire until he saw a poster in a precinct station suggesting that hearing loss could be attributable to work conditions. After he had seen the poster, he consulted his attorneys before seeking medical attention.
Plaintiffs Parisi and Sblendido do not allege a gradual loss of hearing due to prolonged exposure to noise. Plaintiffs Parisi and Sblendido argue that their hearing losses were caused by specific shooting range incidents which occurred on March 17, 1992, and March 19, 1992. These plaintiffs each submit an affidavit in which each claims that he experienced a sudden cracking or *436 ringing sound in his ears during firearms training, and that his hearing loss was caused by the exposure to gunfire on that specific date.
Plaintiff Hernandez, a firearms instructor, argues that his preexisting injuries were exacerbated by a specific incident which occurred on September 20, 1990, when he experienced a “bursting sensation” in his ears during firearms instruction. Officer Hernandez was a party to Martzloff v City of New York (238 AD2d 115 [1st Dept 1997], lv dismissed 90 NY2d 935 [1997]),[1] and his claims in that case were dismissed based on timeliness.
With respect to the remaining plaintiffs, the submissions show the following:
Eugene Miniero: Plaintiff Miniero was deposed on March 21, 2003. He underwent firearms training for the first time in January 1987. His hearing loss was first noticed on June 20, 1991, when leaving a firing range, when he felt a “clogged feeling” in his right ear. A notice of claim was filed on April 7, 1992. This action was commenced in June 1992.
Joseph T. Wilhelm: Plaintiff Wilhelm underwent his initial firearms training in 1983. He testified at his EBT that he felt “heaviness” in his ears when at the firing range. He began to notice a hearing loss in 1992. He filed a notice of claim on March 26, 1992. This action was commenced in June 1992.
Robert J. DePalma: Plaintiff underwent firearms training in 1975. He felt “ringing” in his ears on every occasion at which he underwent training, i.e., every six months. In 1992 he began to have difficulty hearing, and sought medical attention. A notice of claim was filed on June 4, 1992. This action was commenced in July 1992.
James Carroll: Plaintiff was first exposed to the sound of gunfire in May 1984, in connection with another law enforcement job. He was again exposed in 1984 in connection with his employment as a New York City police officer. In 1991, plaintiff, while at home, felt a ringing in his ears. This action was commenced against Mine only in September 1992. Mine has brought a third-party action against defendant City in the Carroll action.
The City’s expert witness, Police Officer Steven Minguez, testified at an examination before trial that hearing protectors were worn at firing ranges, and that it was standard procedure *437 for the instructors to inspect the hearing protectors for defects, and replace those which were defective. Each instructor was required to ensure that the proper safety equipment, including hearing protectors, were in use.
Law Relating to Summary Judgment
The proponent of a motion for summary judgment carries the initial burden of production of evidence as well as the burden of persuasion. (Alvarez v Prospect Hosp., 68 NY2d 320 [1986].) Thus, the moving party must tender[2] sufficient evidence to demonstrate as a matter of law the absence of a material issue of fact. Once that initial burden has been satisfied, the “burden of production” (not the burden of persuasion) shifts to the opponent, who must now go forward and produce sufficient evidence in admissible form to establish the existence of a triable issue of fact. The burden of persuasion, however, always remains where it began, i.e., with the proponent of the issue. Thus “if the evidence [on the issue] is evenly balanced, the party that bears the burden of persuasion must lose.” (Director, Office of Workers’ Compensation Programs v Greenwich Collieries, 512 US 267, 272 [1994]; 300 E. 34th St. Co. v Habeeb, 248 AD2d 50 [1st Dept 1997].)
The court’s function on this motion for summary judgment is issue finding rather than issue determination. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].) Since summary judgment is a drastic remedy, it should not be granted where there is any doubt as to the existence of a triable issue. (Rotuba Extruders v Ceppos, 46 NY2d 223 [1978].) Thus, when the existence of an issue of fact is even arguable or debatable, summary judgment should be denied. (Stone v Goodson, 8 NY2d 8 [I960]; Sillman v Twentieth Century-Fox Film Corp., supra.)
The role of the court is to determine if bona fide issues of fact exist, and not to resolve issues of credibility. As the Court stated in Knepka v Tollman (278 AD2d 811 [4th Dept 2000]):
“Supreme Court erred in resolving issues of credibility in granting defendants’ motion for summary judgment dismissing the complaint (see, Mickelson v Babcock, 190 AD2d 1037; see generally, Black v Chittenden, 69 NY2d 665, 669; Capelin Assocs. v Globe Mfg. Corp., 34 NY2d 338, 341). Any inconsistencies *438 between the deposition testimony of plaintiffs and their affidavits submitted in opposition to the motion present credibility issues for trial (see, Schoen v Rochester Gas & Elec., 242 AD2d 928; Mickelson v Babcock, supra).” (Id. at 811; see also, Yaziciyan v Blancato, 267 AD2d 152, 152 [1st Dept 1999] [“The deponent’s arguably inconsistent testimony elsewhere in his deposition merely presents a credibility issue properly left for the trier of fact”].)
Nevertheless, summary judgment is properly granted when the opponent of the motion raises only feigned issues of fact. (See Perez v Bronx Park S. Assoc., 285 AD2d 402 [1st Dept 2001] [Court held that the submission of a one-page affidavit from a neighbor, which was in conflict with plaintiff’s deposition testimony, was insufficient to raise an issue of fact]; Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439, 441 [1968] [“feigned” issues do not raise question of fact]; Singh v Kolcaj Realty Corp., 283 AD2d 350 [1st Dept 2001] [plaintiffs expert’s opinion that illegally parked car was proximate cause of accident was a legal conclusion which was of no consequence, and could not defeat defendant’s motion for summary judgment]; Phillips v Bronx Lebanon Hosp., 268 AD2d 318, 320 [1st Dept 2000] [“self-serving affidavits submitted by plaintiff in opposition clearly contradict plaintiffs own deposition testimony and can only be considered to have been tailored to avoid the consequences of her earlier testimony”].)
Law Relating to CPLR 3211 Motions
CPLR 3211 (a) provides in relevant part that: “A party may move for judgment dismissing one or more causes of action asserted against him on the ground that: 1. a defense is founded upon documentary evidence; or . . .7. the pleading fails to state a cause of action . . . .” When the sufficiency of the pleadings is attacked, the allegations contained in the complaint, as supplemented by the moving papers, “must be given their most favorable intendment” (Arrington v New York Times Co., 55 NY2d 433, 442 [1982], cert denied 459 US 1146 [1983]; Dulberg v Mock, 1 NY2d 54, 56 [1956]). As the Court stated in Ark Bryant Park Corp. v Bryant Park Restoration Corp. (285 AD2d 143, 150 [1st Dept 2001]):
“Generally, on a motion to dismiss made pursuant to CPLR 3211, the pleading is to be afforded a liberal construction (see, CPLR 3026), and the court should accept as true the facts as alleged in the *439 complaint, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (Leon v Martinez, 84 NY2d 83, 87-88; Morone v Morone, 50 NY2d 481, 484; Sotomayor v Kaufman, Malchman, Kirby & Squire, 252 AD2d 554; Fischbach & Moore v Howell Co., 240 AD2d 157). In those circumstances where the legal conclusions and factual allegations are flatly contradicted by documentary evidence, they are not presumed to be true or accorded every favorable inference (Biondi v Beekman Hill House Apt. Corp., 257 AD2d 76, 81, affd 94 NY2d 659; Kliebert v McKoan, 228 AD2d 232, lv denied 89 NY2d 802), and the criterion becomes ‘whether the proponent of the pleading has a cause of action, not whether he has stated one’ (Guggenheimer v Ginzburg, 43 NY2d 268, 275; see also, Leon v Martinez, supra, at 88).” (Emphasis added.)
In addition to the pleadings the court may also consider evidentiary material submitted on the motion in order to remedy any defects in the complaint (Vorel v NBA Props., 285 AD2d 641 [2d Dept 2001]), and the salient issue for determination is ordinarily only “whether the facts as alleged fit within any cognizable legal theory” (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]).
Discussion
Statute of Limitations; Generally
Crucial to these motions is a determination as to when the respective claims of the plaintiffs accrued. Defendant City argues that notices of claim were not timely filed on behalf of each plaintiff, nor was an action timely commenced within the requisite one-year and 90-day period, since the claims accrued on the date of the first exposure to gunfire. Defendant Mine similarly argues that the cause of action for each plaintiff accrued on the date of first exposure, and that consequently each of the eight actions brought against Mine must be dismissed as having been brought more than three years after each cause of action first accrued.
Defendants rely on an old (now abrogated) rule enunciated in Schmidt v Merchants Despatch Transp. Co. (270 NY 287 [1936]), in which the Court held that a cause of action arising out of an illness caused by inhalation of toxic dust accrued on the date *440 the plaintiff was exposed to the toxic dust — i.e., the date of the first inhalation. “The injury to the plaintiff was complete when the alleged negligence of the defendant caused the plaintiff to inhale the deleterious dust.” (Id. at 301.) “[T]he Court reasoned that initial inhalation causes actual physical damage to the body, which leads inexorably to the ultimate condition of which plaintiff complains, even though that condition may not fully manifest itself until many years later.” (See MRI Broadway Rental v United States Min. Prods. Co., 92 NY2d 421, 426-427 [1998].)
Ironically, in this case which may be held not to involve a toxic tort (sound being a benign substance), the defendants rely on the oid common-law rule relating to toxic torts, which has now been statutorily abrogated by CPLR 214-c. The irony is that the plaintiffs are seemingly bound to follow an impossible common-law rule which would require them to give notice of an injury before one occurred, or before it was manifested, and yet they are precluded from taking advantage of the “modern” rule embodied in CPLR 214-c, because the Court of Appeals appears to have held that this amendment to the CPLR applies only to toxic substances and not to benign substances — despite the fact that benign substances may be made toxic by contamination, or method of administration.[3]
*441 As the Court of Appeals further explained in Consorti v Owens-Corning Fiberglas Corp. (86 NY2d 449, 451-452 [1995]):
“The issue of date of injury in toxic substance exposure cases in the New York courts has most often been presented in the context of the application of the Statute of Limitations. Much the same considerations apply in determining the date of injury for purposes of a loss of consortium claim, and neither party here disputes that the holdings of those cases are the controlling precedents for the disposition of the instant case. Concededly, as noted by the Second Circuit, there is language in our earlier toxic substance exposure decisions which may be read as basing the operative date of injury on ‘ “when there is some actual deterioration of a plaintiff’s bodily structure” ’ (id., at 50, quoting Schwartz v Hey den Newport Chem. Corp., 12 NY2d 212, 217, remittitur amended 12 NY2d 1073, cert denied 374 US 808). Nonetheless, the true holdings of these early cases (and the results reached) point to the rejection of a fact-based date of medical injury test. That rejection was made for practical and policy reasons articulated in the developing case law, that is, the need to provide manufacturers, employers and other economic actors who are potential defendants with a degree of certainty or predictability in assessing the risk of liability and to avoid stale claims which often turn on questions of *442 credibility or disputed medical judgments. Therefore, a bright line, readily verifiable rule was adopted in which, as a matter of law, the tortious injury is deemed to have occurred upon the introduction of the toxic substance into the body. Thus, in Schmidt v Merchants Desp.-Transp. Co. (270 NY 287, rearg denied 271 NY 531), a case where the claim arose out of plaintiffs inhalation of silicone dust, subsequently resulting in his contracting pneumoconiosis, this Court rejected plaintiffs claim that the injury giving rise to his cause of action occurred ‘not at the time he inhaled the dust . . . but at the time when the dust, so inhaled, resulted in a disease of the lungs and that date, it is said, can be determined only by medical testimony’ {id., at 300 [emphasis supplied]).” (Additional emphasis added.)
For toxic torts, the rule of “first exposure” is today ameliorated by CPLR 214-c, which was enacted in 1986 to address the obvious unfairness of an accrual rule which treated toxic tort claims as having accrued many years before any actual bodily injury was manifested.
Yet the common-law rule seemingly survives in certain cases, and has in fact been applied by the Appellate Division under the same circumstances now presented. (See, e.g., Martzloff v City of New York, supra; Casson v City of New York, supra.) Nevertheless, the Court of Appeals refused to apply the common-law rule in repetitive stress injury cases arising out of the use of a computer keyboard. Rather, with respect to repetitive stress injury cases, which are similar to the cases now under review, the Court of Appeals concluded that the cause of action accrued against the manufacturer upon (1) the onset of symptoms, or (2) the last use of the injury-producing device, whichever was earlier. (Blanco v American Tel. & Tel. Co., 90 NY2d 757 [1997], modfg 223 AD2d 156 [1st Dept 1996].)
In Blanco, the Court of Appeals did not abrogate the ancient rule of Schmidt v Merchants Despatch Transp. Co. Rather, in Blanco, the Court of Appeals adopted a sui generis rule specifically tailored to repetitive stress injury (RSI) cases. The Court reasoned (at 772-773):
“The exposure rule is premised upon the proposition that, while injury is necessary for the accrual of a cause of action, injury in a toxic tort case accrues upon exposure to the toxic substance, because it is at that point that there has been ‘a wrongful inva *443 sion of personal or property rights’ (Schmidt v Merchants Desp. Transp. Co., supra, 270 NY, at 300). This was based upon the assumption that a toxic substance acts immediately upon the body to produce injury (see, Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, supra; cf., Consorti v Owens-Coming Fiberglas Corp., supra, 86 NY2d, at 451-452). A keyboard is obviously not an inherently toxic or dangerous substance, and exposure to a keyboard is not a ‘wrongful invasion’ in the same sense as is exposure to a toxic substance. Indeed, if we were to apply a first exposure rule literally, then we would have to justify it on the legal fiction that an injury occurs the first moment a person presses a button on a keyboard. It would be absurd to argue that a person who simply touches a keyboard sustains the type of trauma that will eventually lead to RSI. As plaintiffs’ doctor noted in his affidavit, this type of injury has ‘no single initiating event, but rather an accumulation of events.’ Thus, because a keyboard is not an inherently toxic or dangerous substance, and a person who initially touches one does not necessarily sustain an injury, the justifications that gave rise to the exposure rule do not apply here.” (Emphasis added.)
The foregoing language would seem to suggest that under the present circumstances, Blanco and not Schmidt should govern the analysis as to when the cause of action accrues. However, ultimately, a proper record must be made to determine whether injury from excessively loud noise occurs the very first time a person fires a gun at a firing range, or whether the injury may occur at a later occasion when a weapon is being fired. It is certainly not clear that a person who is exposed to the noise of gunfire over a course of years necessarily sustains an injury on the very first occasion of exposure to gunfire. Some officers never experience hearing problems despite similar exposure to the noise of gunfire.
Statute of Limitations; Precedent Involving Exposure to the Noise of Gunfire
In Martzloff v City of New York (238 AD2d 115 [1st Dept 1997], lv dismissed 90 NY2d 935 [1997]), the Appellate Division dismissed, as time-barred, the claims of police officers employed as range instructors for hearing damage as a result of exposure to the sound of gunfire, finding that the date of accrual of the claims was the first date of exposure. The Court held (at 117-118):
*444 “[T]he traditional rule of Schmidt v Merchants Desp. Transp. Co. (270 NY 287, 300 [1936]) is controlling: ‘Injury, as it is meant in the context of the statute, occurs and is “complete” when the offending substance is inhaled or otherwise first “introduced” into the body,.not when the disease manifests itself. The disease is not the injury, but the consequences of the injury (81 NY2d, supra, at 433, citing Schmidt v Merchants Desp. Transp. Co., supra, at 301). Thus, it is this first date of exposure from which the Statute of Limitations is to be measured, notwithstanding the fact that the individual may be unáware of any injury until some disease or condition manifests itself — often many years later’ (223 AD2d, supra, at 162-163). Any doubt that the date of injury controls the start of the applicable period of limitations, even where the etiology of the injury is obscure, was recently resolved by the Court of Appeals’ decision in Matter of New York County DES Litig. (89 NY2d 506). The Court made it clear that, to take advantage of CPLR 214-c in order to ameliorate the harsh result of the date-of-exposure rule, a plaintiff must ‘ “allege and prove that technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would have been authorized” ’ (supra, at 512, quoting CPLR 214-c [4]). Since plaintiffs herein do not dispute that exposure to high sound levels is a known cause of hearing loss, they may not avail themselves of the discovery rule of CPLR 214-c. Because their actions were commenced more than one year and 90 days after the date they were first exposed to the- sound of gunfire as firearms instructors for defendant City, their claims are untimely and must be dismissed (Pierson v City of New York, 56 NY2d 950).”
The Martzloff court relied in part on the Appellate Division’s determination in Blanco v American Tel. & Tel. Co. (223 AD2d 156 [1996]), which, as noted above, was later modified. The Martzloff ruling might be subject to questioning on that basis.
Subsequent to the modification in Blanco v American Tel. & Tel. Co., the Appellate Division was again confronted with the issue of the time of accrual of the statute of limitations in police *445 firing range cases. (See Casson v City of New York, 269 AD2d 285 [1st Dept 2000].) The Appellate Division thus had an opportunity to examine, in light of the modification in Blanco, whether the common-law “first exposure rule” applied in gunfire cases. The Casson court dismissed similar claims to those now raised in the present action, as it had in Martzloff, on the ground that the claims were time-barred. In Casson, however, the Appellate Division specifically rejected the argument that the rule in Blanco (onset of symptoms or the last use of the injury-producing device) applied. However, it appears to have done so only because of one untested and unelaborated, speculative statement provided by plaintiffs expert in a lengthy report. The Court, in addition, rejected the contention that CPLR 214-c afforded the plaintiffs a limitations period calculated from the time of discovery of the injury. The Court held (at 286):
“These 12 consolidated appeals all arise out of the hearing loss and related injuries allegedly suffered by plaintiffs, current and former members of the New York City Police Department, as a result of their exposure to the sound of gunfire at Police Department firing ranges and the lack of adequate protective devices. As this Court has already determined upon an identical set of facts, ‘sound’ is not a ‘substance’ within the meaning of CPLR 214-c, and therefore plaintiffs’ claims are subject to the Statute of Limitations set forth in CPLR 214 (see, Martzloff v City of New York, 238 AD2d 115, 117, lv dismissed 90 NY2d 935). The last-use-or-onset-of-symptoms-whichever-is-earlier accrual rule applicable to repetitive stress injuries, such as those resulting from extended use of computer keyboards, as set forth by the Court of Appeals in Blanco v American Tel & Tel Co. (90 NY2d 757, 772-774), does not apply to plaintiffs’ claims, since their own expert states that symptoms of clinically measurable damage manifest themselves immediately upon exposure to high sound levels. Thus, the traditional date of first exposure governs the accrual of plaintiffs’ claims (see, Martzloff v City of New York, supra, at 118). We modify to dismiss the causes of action under General Municipal Law § 205-e since plaintiffs did not suffer an ‘accident’ within the meaning of that statute (see, supra).” (Emphasis added.)
The Casson court’s statement that plaintiffs’ “own expert states that symptoms of clinically measurable damage manifest *446 themselves immediately upon exposure to high sound levels” appears to be based on a statement made by Dr. Kruger in his August 6, 1992 affidavit that “since most people do not recognize even significant hearing losses . . . there is no reason to conclude that any number of officers did not sustain clinically measurable levels of damage immediately following gunfire.” In other words, based on this speculative (almost meaningless) statement, the Appellate Division appears to have concluded that it would have been possible to clinically observe “measurable” hearing loss in the plaintiffs immediately after the first exposure to the sound of gunfire, despite the fact that they may have experienced no symptoms.
This court is troubled by the fact that the Appellate Division has seen ostensibly fit to apply the now abrogated common-law rule of Schmidt v Merchants Despatch Transp. Co. Justice and fairness would seem to suggest that either the sound of gunfire be considered to be “toxic” within the meaning of CPLR 214-c, or in the alternative, that the rule in Blanco be applied, since in effect the plaintiffs are claiming a “repetitive stress” injury to the ear. The gradual exposure to noise resulting in injury over time would appear to be more akin to the gradual harm inflicted by the use of computer keyboards, and the rule of Blanco would conceptually make more sense when applied in this case. As was observed in Blanco, “Indeed, if we were to apply a first exposure rule literally, then we would have to justify it on the legal fiction that an injury occurs the first moment a person presses a button on a keyboard.” (90 NY2d at 772.) Here, a strict adherence to Martzloff and Casson would require the plaintiffs to bring an action within one year and 90 days after their first exposure to the noise of gunfire at a firing range, long before it was known whether an injury might occur, or, indeed, long before there was in fact any injury.
Plaintiffs Parisi and Sblendido argue that they are not bound by the holdings in Martzloff and Casson because, unlike those plaintiffs, they are not alleging injury as a result of prolonged exposure to gunfire. Rather, plaintiffs Parisi and Sblendido maintain that their injuries and symptoms arose out of discrete, identifiable incidents which occurred within the relevant limitations period. Similarly, plaintiff Hernandez, although a party to prior litigation, seeks recovery for exacerbation of his prior hearing loss arising out of a discrete incident.
Assuming that the “first exposure rule” applies in this case, the court agrees that the claims as framed by plaintiffs Parisi, *447 Sblendido and Hernandez are distinct from those raised in Martzloff and Casson, and thus are not barred by the “first exposure” rule.
With respect to plaintiff Pepitone and the remaining plaintiffs, who claim that their ears “popped” or that they experienced pain or symptoms on unspecified dates, or on dates subsequent to one year and 90 days after their first exposure to gunfire, there is a stronger argument that they have not sufficiently distinguished their claims from the claims raised in Martzloff and Casson. Nevertheless, this court, upon careful consideration, declines to apply the rule of Martzloff, as that case was decided prior to the determination in Blanco. With respect to Casson, the linchpin of the Appellate Division decision was that plaintiffs’ “own expert states that symptoms of clinically measurable damage manifest themselves immediately upon exposure to high sound levels.” It is not clear exactly what this expert was intending to say. Assuming, arguendo, that some persons suffered hearing loss as a result of exposure to gunfire noise at the firing range, it hardly seems plausible that every police officer suffered such injury, or that every person who suffered an injury sustained that injury on the very first occasion, or that the injury was then at its fullest extent, rather than minor and temporary. It suffices to say, however, that in this action, the plaintiffs have not had an opportunity to present any expert testimony, and the defendants are relying solely on the affidavit submitted by an expert in the prior litigation. It is hardly reasonable and fair to bind the plaintiffs to questionable statements made by an expert in another case.
This court accordingly denies the motions predicated upon the statute of limitations with leave to renew. A sufficient factual record does not exist to state that the plaintiffs did suffer hearing loss on the very first occasion at the firing range, and that the loss was measurable or subjectively cognizable; or whether the loss could have occurred at a specified date when a particular incident of “popping” or an “explosion” within the ear occurred.
Adequacy of the Safety Devices
Defendant City argues that the safety devices were adequate as a matter of law. The City has not submitted expert evidence establishing prima facie that the hearing protection was adequate.
Immunity for Discretionary, Governmental Acts
Defendant City argues that it may not be held liable for its choice of safety equipment, as that choice is the result of a *448 governmental act. The discretionary acts of public officials are entitled to qualified immunity. Qualified immunity will not shield the government from liability for actions taken in bad faith or the consequences of a decision that is the result of inadequate study or lacks any reasonable basis. (Lauer v City of New York, 95 NY2d 95 [2000].)
In McCormack v City of New York (80 NY2d 808 [1992]), the Court dismissed a claim based on an allegedly inadequate police “bullet-proof’ vest. The claim was dismissed because the vest was adequate, albeit not the “best” or the most advanced “state of the art.” The Court reasoned (at 810-811):
“Although plaintiff demonstrated that there were other, more protective equipment on the market, it cannot be denied that the Davis vest, which covers large areas of the upper torso, provides a measure of protection from gunfire and is therefore suitable for use in situations in which hostile gunfire is anticipated (cf., MacClave v City of New York, 24 AD2d 230, affd 19 NY2d 892). Further, as the evidence at trial showed, the more protective devices available on the market afford reduced mobility, a disadvantage that might well lead City officials to choose the Davis vest over the alternatives notwithstanding the latter’s expanded coverage. The relative wisdom of such a choice may not be reviewed in a personal injury action founded on negligence, at least where the choice is not an irrational one. As we have previously stated, ‘when official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is not answerable in damages for the injurious consequences of that action’ (Haddock v City of New York, 75 NY2d 478, 484; see, Mon v City of New York, 78 NY2d 309, 313; Tango v Tulevech, 61 NY2d 34).” (Emphasis added.)
As is clear from the foregoing case, the crucial issue in this action is whether the municipality provided adequate safety devices, which cannot be resolved by way of motion at this juncture.
Whether the Failure to Preserve the Actual Hearing Protectors Constitutes Spoliation
Neither intentional nor negligent spoliation has been established in this action. The protection devices appear to have been *449 owned by the defendant City, and thus it does not appear that the plaintiffs were primarily responsible for preserving the safety devices. In any event, it has not been shown that any party intentionally destroyed the actual safety devices used by the present plaintiffs. Moreover, it appears that plaintiffs claim that the devices, even in pristine condition, were inadequate, i.e., the plaintiffs claim that the injuries were not caused by excessively worn or used devices. Consequently, the present inability to test the actual devices worn by the plaintiffs is not prejudicial.
Whether Plaintiffs Have Established That Defendant Mine Manufactured the Specific Safety Devices
Despite the fact that the actual safety devices employed by the plaintiffs were not preserved, there is adequate evidence at this juncture to raise a triable issue of fact as to whether Mine manufactured the particular safety devices employed by the plaintiffs. The safety devices in use at the firing ranges at which the plaintiffs allege they sustained injury were manufactured by Mine, and in addition, the plaintiffs have identified photographs of the devices they used as those manufactured by Mine.
Conclusion
The remaining arguments are either rendered academic by the foregoing, or are found to be without merit. The motions and cross motions are denied.

. Whether or not the Martzloff litigation is controlling and dispositive in the present case is central to the determination of this motion. The Martzloff case is, therefore, extensively discussed below.

. There is no requirement that proof be submitted in the form of an affidavit, as opposed to other acceptable forms, such as deposition testimony. (Muniz v Bacchus, 282 AD2d 387 [1st Dept 2001].)

. It must be noted that CPLR 214-c does not speak of “toxic” substances, but rather “injury . . . caused by the latent effects of exposure to any substance” and “exposure to any substance or combination of substance, in any form.” (CPLR 214-c [2] [emphasis added].) Later in the statute, the Legislature revived a number of toxic tort claims, identifying each toxic tort by name. Nevertheless, the Court of Appeals has ruled and required that the substance be “toxic.” In Blanco (90 NY2d at 767), the Court observed,
“While CPLR 214-c does nominally cover situations where a plaintiff is injured due to ‘contact’ with a ‘substance,’ it is plain from reading the statute as a whole that the types of substances intended to be covered are toxic substances. To the extent that confirmation of this point is necessary, it can be found in abundance in the legislative history. Virtually every memorandum in support of the bill, including that of the Senate sponsor, the Governor and the Attorney-General, refers to the law enacting section 214-c as the ‘toxic torts’ bill. Obviously, a keyboard is not a toxic substance and therefore, CPLR 214-c is inapplicable to plaintiffs’ claims. Thus, it is CPLR 214, rather than section 214-c, that controls the disposition of this case.”
Following Blanco, therefore, it has been held that injury to a worker caused by exposure to compressed air was not a “toxic tort” and not within the purview of CPLR 214-c. (Patterson v City of New York, 289 AD2d 213 [2d Dept 2001], appeal denied 98 NY2d 614 [2002].)
*441 Light and sound may be made toxic; sound can readily cause injury, and high intensity strobe lights can injure the eyes, or disorient or incapacitate persons. Thus it may be an appropriate time to modify the rule that “benign” substances are not within the ambit of the statute. This court notes that to the extent the rule that “benign” substances are not within the purview of the statute, “judge made” rules are subject to modification. As the exclusion of “benign” substances from the reach of the statute results from judicial interpretation, the rule may be amended by judicial interpretation. As stated by the Court of Appeals in Woods v Lancet (303 NY 349, 355 [1951]),
“We act in the finest common-law tradition when we adapt and alter decisional law to produce common-sense justice. . . .
“Legislative action there could, of course, be, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule.”
This is especially appropriate when the application of judicial doctrines deprives a plaintiff of all right to seek redress for a wrong. “It is fundamental to our common-law system that one may seek redress for every substantial wrong.” (Battalla v State of New York, 10 NY2d 237, 240 [1961].)