[879 NYS2d 418]

CHILDREN'S CORNER LEARNING CENTER, Respondent, v A. MI-
RANDA CONTRACTING CORP. et al., Defendants. HENRY LO-
HEAC, P.C., Third-Party Plaintiff-Respondent, v MF ELECTRI-
CAL SERVICE CO., INC., et al., Third-Party Defendants, and
GEORGE E. BERGER & ASSOCIATES, LLC, et al., Third-Party
Defendants-Appellants.

First Department, May 21, 2009

**APPEARANCES OF COUNSEL**

*Gogick, Byrne & O'Neill, LLP*, New York City (*Anthony W. Vaughn, Jr.* of counsel), for George E. Berger & Associates, LLC, appellant.

*Zeichner Ellman & Krause LLP*, New York City (*Bryan D. Leinbach* and *Barry J. Glickman* of counsel), for JAM Consultants, Inc., appellant.

*Ellen Rothstein*, New York City, for Children's Corner Learning Center, respondent.

*Milber Makris Plousadis & Seiden, LLP*, Woodbury (*Sarah M. Ziolkowski* and *Lorin A. Donnelly* of counsel), for Henry Loheac, P.C., respondent.

**OPINION OF THE COURT**

MAZZARELLI, J.

In March 2004, plaintiff retained defendant Henry Loheac, P.C. to provide architectural services for plaintiff's planned conversion of premises it leased into a day care center. Plaintiff alleges that it advised Loheac that it intended to begin operating the day care center in January 2005. Plaintiff also claims that Loheac assured it that all necessary construction permits and licenses would be obtained by November 2004. Construction was delayed, causing the day care center to open approximately six months later than the target date of January 2005.

Thereafter, plaintiff commenced this action against Loheac, A. Miranda Contracting Corp. (plaintiff's general contractor), Newman Design Group (the architect retained by the building's owner), MF Electrical Service Co., Inc. (the electrical subcontractor hired by the general contractor) and High Rise Fire Protection Corp. (the fire alarm installer allegedly hired by either the general contractor or the electrical subcontractor). Plaintiff's claims against Loheac are found in the fourth, fifth and sixth causes of action in the complaint. In the fourth cause of action, plaintiff asserts Loheac breached its contract by, generally, failing to perform its work in a timely fashion. As a result, plaintiff alleges it was unable to obtain the licenses necessary to open a fully operational day care center in January 2005. Plaintiff says it was damaged because it "was caused to incur additional expenses to help correct the defective, faulty, improper and inadequate work caused by LOHEAC's breach of contract so that Plaintiff could open and operate as a fully licensed day care center."

The fifth cause of action also sounds in breach of contract. Plaintiff claims that Loheac caused it "unanticipated, uncontemplated and/or unreasonable delay and disruption" by not obtaining the necessary licenses and permits for, and otherwise failing to properly supervise the installation of, a fire alarm system. In the fifth cause of action, plaintiff maintains it was damaged to the extent that it "has incurred, expended or has been deprived of payment and damaged for all consequential and inconsequential damages, including, but not limited to, those incurred for additional labor, supervision, supplies, material, equipment, and losses for rent and additional rent, loss of operating expenses, and lost profits."

Plaintiff asserts in the sixth cause of action that Loheac was negligent in the performance of its duties, and that its acts and

omissions constituted professional malpractice. The factual allegations supporting this cause of action are substantially similar to those underlying both the fourth and fifth causes of action. In the sixth cause of action, plaintiff claims that it was damaged to the extent that

> "opening of the day care center was severely disrupted and impeded and was rendered uneconomical and costly beyond its anticipation or reasonable expectation; among other things, Plaintiff was delayed from opening for six months, or more than 100% of the original contract period; Plaintiff's planned opening was delayed into seasons contrary to the original schedule; Plaintiff was forced to incur additional expenses to be able to open the day care center on an interim basis and on a full time basis; Plaintiff's initial advertising and initial operating costs were rendered a loss, as Plaintiff was unable to open as scheduled; Plaintiff was deprived of the benefit of its bargain with its landlord in that Plaintiff was unable to fully operate during the initial six month lease period in which Plaintiff had been given a 100% rent abatement; Plaintiff was deprived of the ability to collect revenues from which to pay, among other things, operating expenses; Plaintiff was deprived of its profits to be derived from the fully operational the day care center [*sic*] for approximately six months; the value of the Premises was diminished based upon Plaintiff's inability to utilize same in the manner intended, at the capacity intended and of which defendant was fully aware for approximately six months."

Loheac commenced a third-party action against, among others, appellants George E. Berger and Associates and JAM Consultants, Inc. The third-party complaint identified both Berger and JAM as having been retained by plaintiff, the building owner or the property manager "as an expediter with respect to the filing of applications to obtain permits, licenses and other approvals of the work performed at the subject building including but not limited to the electrical system, fire sprinkler system and alarm system." Loheac alleges in the third-party complaint that Berger and JAM "failed to possess the requisite skill, knowledge and ability to obtain such permits" and that their "fail[ure] to timely obtain the necessary permits, approvals and licenses within a reasonable time period result[ed] in

the delayed opening of the daycare center by the plaintiff and the alleged damages sustained as a result thereof." Loheac therefore seeks "common law contribution or indemnification" from Berger and JAM in the event it is found liable to plaintiff. In the third-party complaint Loheac also pleaded claims for contractual contribution or indemnification against Berger and JAM as well as damages based on the alleged failure of Berger and JAM to procure insurance on Loheac's behalf.

Defendant Newman Design Group moved, pursuant to CPLR 3211 (a) (7), to dismiss plaintiff's complaint as against it. Berger and JAM separately cross-moved, under CPLR 3211 (a) (7) and 3212, to dismiss the third-party complaint as against them. Berger argued that because plaintiff's complaint only sought economic loss damages from Loheac, no claim for common-law contribution or indemnification was available. Berger further stated that no agreements existed between it and Loheac that required it to indemnify Loheac or to procure insurance. JAM made the same arguments as Berger. However, it also argued that Loheac was precluded from seeking common-law indemnity because plaintiff had alleged active wrongdoing against Loheac.

In opposition to the cross motions by Berger and JAM, Loheac stressed that the claims made by plaintiff against it included a claim for professional malpractice, in addition to those for breach of contract. The possibility it might be found liable in tort, Loheac asserted, permitted it to make claims for common-law contribution and indemnity. In opposing the cross motions, Loheac did not identify any agreements between it and either Berger or JAM that supported its claims against them for contractual indemnification and breach of contract.

The motion court granted the cross motions of Berger and JAM only to the extent of dismissing Loheac's third-party claims for contractual indemnification and breach of contract. This was based on Loheac's failure to oppose those parts of the cross motions which addressed those claims. However, the court refused to dismiss the claims for common-law contribution and indemnification. Relying on *Tower Bldg. Restoration v 20 E. 9th St. Apt. Corp.* (295 AD2d 229 [2002]), the court held that plaintiff's claim for professional malpractice against Loheac supported Loheac's third-party claims against Berger and JAM. The court further held that Loheac stated valid causes of action against Berger and JAM for common-law indemnification by alleging that Loheac's failure to obtain permits in a timely fashion was solely the result of the negligence of Berger and JAM.

■ Loheac's claim for common-law contribution against both Berger and JAM should have been dismissed. Where, as here, the underlying claim seeks purely economic damages, a claim for common-law contribution is not available. CPLR 1401 codified the concept of common-law contribution recognized by the Court of Appeals in *Dole v Dow Chem. Co.* (30 NY2d 143 [1972]). That section spells out the circumstances in which a party may seek contribution from another party. They are as follows:

> "Except as provided in sections 15-108 and 18-201 of the general obligations law, sections eleven and twenty-nine of the workers' compensation law, or the workers' compensation law of any other state or the federal government, two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought" (CPLR 1401).

In the cases which have followed since the Court of Appeals decided *Dole v Dow Chem. Co.* and this statute was enacted, it is well established that "purely economic loss resulting from a breach of contract does not constitute 'injury to property' " (*Board of Educ. of Hudson City School Dist. v Sargent, Webster, Crenshaw & Folley*, 71 NY2d 21, 26 [1987]). In *Sargent*, a case similar to this, the plaintiff, a school district, commenced a breach of contract action against the architectural firm that designed a school construction project and the general contractor that built the school. The school's roof began to leak shortly after construction was completed. The school district claimed that the architects breached their contract with the district by not obtaining proper approval of the roofing subcontractor and by failing to secure a guarantee from the roof manufacturer. The architects sought contribution from the general contractor. In that case, the Court of Appeals, after reviewing *Dole v Dow Chem. Co.* and the legislative history of CPLR 1401, did not allow contribution. It stated that

> "[t]o permit apportionment of liability, pursuant to CPLR 1401, arising solely from breach of contract would not only be at odds with the statute's legislative history, but also do violence to settled principles of contract law which limit a contracting party's liability to those damages that are reasonably fore-

seeable at the time the contract is formed" (71 NY2d at 28).

Loheac tries to distinguish the present matter from *Sargent*. It argues that, unlike here, there was no claim for professional malpractice in *Sargent*, asserting that the presence of a tort claim against it in this action permits a claim for contribution. While claims for professional malpractice and breach of contract may coexist, even though both arise out of the professional's contractual obligations (*see Sommer v Federal Signal Corp.*, 79 NY2d 540, 551 [1992]; *17 Vista Fee Assoc. v Teachers Ins. & Annuity Assn. of Am.*, 259 AD2d 75, 83 [1999]), Loheac's argument must be rejected. This is because the touchstone for purposes of whether one can seek contribution is not the nature of the claim in the underlying complaint but the measure of damages sought therein (*see Trump Vil. Section 3 v New York State Hous. Fin. Agency*, 307 AD2d 891, 897 [2003], *lv denied* 1 NY3d 504 [2003]; *Rothberg v Reichelt*, 270 AD2d 760, 762 [2000]; *Rockefeller Univ. v Tishman Constr. Corp. of N.Y.*, 240 AD2d 341, 343 [1997], *lv denied* 91 NY2d 803 [1997]). Here, the damages sought from Loheac are economic only. That is, plaintiff seeks only to be returned "to the point at which the breach arose and to [be placed] in as good a position as it would have been" had Loheac secured the permits in a timely fashion (*Brushton-Moira Cent. School Dist. v Thomas Assoc.*, 91 NY2d 256, 261 [1998]). That Loheac seeks the same measure of damages for breach of contract as for professional malpractice is confirmed by the fact that the specific damages sought in the fifth cause of action for breach of contract are substantially similar to the specific damages sought in the sixth cause of action for professional malpractice.

In arguing to the contrary, Loheac relies, as did the motion court, on *Tower Bldg. Restoration v 20 E. 9th St. Apt. Corp.* (295 AD2d 229 [2002], *supra*). However, that case is distinguishable. Although the decision in *Tower Bldg. Restoration* did not specify the nature of the damages sought against the fourth-party plaintiff architect, a review of the briefs does. They reveal that the third-party plaintiff there, a cooperative apartment corporation, sought traditional tort damages from the architect in connection with the architect's alleged damaging of the floor and roof of one of the apartments in the building. In this case, plaintiff does not claim any damages that seek traditional tort remediation.

Loheac's reliance on *Castle Vil. Owners Corp. v Greater N.Y. Mut. Ins. Co.* (58 AD3d 178 [2008]) is also misplaced. The claim

there against the third-party plaintiff engineering firm was that its malpractice directly led to the collapse of a retaining wall. The plaintiff sought traditional tort damages in connection with the collapse, and not just the benefit of its bargain with the engineering firm. As a result, this Court upheld the firm's contribution claim against the engineers whom it had hired to design and implement certain corrective measures for the stability of the wall.

Loheac also looks to the Third Department's decision in *Robinson Redevelopment Co. v Anderson* (155 AD2d 755 [1989]) for support. In that case, the Third Department held that contribution is available even where the plaintiff seeks purely economic damages as a result of professional malpractice. However, this Court has expressly declined to follow *Robinson* (*see Rockefeller Univ. v Tishman Constr. Corp. of N.Y.*, 240 AD2d at 343). Moreover, the Third Department has implicitly overruled *Robinson* (*see Rothberg v Reichelt*, 270 AD2d at 762 [2000] [citing *Rockefeller University* in dismissing common-law contribution claim where plaintiff's underlying complaint sought only the benefit of a contractual bargain]).

■ Loheac's common-law indemnification claim against JAM should also have been dismissed pursuant to CPLR 3212. In support of its motion, JAM submitted the affidavit of a project manager who stated that JAM's duties on the project were limited to "pre-fil[ing]" an application concerning, among other things, the sprinkler system, with the Department of Buildings on behalf of Loheac. He asserted that he did this "promptly, in good faith and in accordance with the reasonable commercial standards of its business." The project manager further averred that after he learned that the Department would not approve the application before the premises were approved for use as a day care center, he communicated that information to Loheac. Finally, the project manager claimed that JAM had no involvement with the process that ultimately resulted in plaintiff becoming approved to operate a day care center. Loheac failed to refute any of the foregoing. Thus, its claim for common-law indemnification against JAM should have been dismissed.

■ However, Loheac's claim for common-law indemnification against Berger should continue. On a motion pursuant to CPLR 3211 (a) (7) we accept all factual allegations in the pleading as true. Loheac unquestionably pleaded that plaintiff (or, alternatively, the building owner or property manager) hired Berger as an expediter, and that it was responsible for obtaining permits

and licenses. If plaintiff did indeed retain Berger to timely obtain necessary licenses and permits, then the possibility exists that an ultimate finding of liability against Loheac could have been solely due to Berger's negligence (*see 17 Vista Fee Assoc. v Teachers Ins. & Annuity Assn. of Am.*, 259 AD2d at 83; *Trustees of Columbia Univ. v Mitchell/Giurgola Assoc.*, 109 AD2d 449, 453 [1985]). To the extent that Berger moved to dismiss the common-law indemnification claims against it pursuant to CPLR 3212, it, unlike JAM, failed to tender evidence sufficient to negate that possibility as a matter of law.

Accordingly, the order of the Supreme Court, Bronx County (Wilma Guzman, J.), entered July 16, 2007, which, to the extent appealed from, denied the cross motions of third-party defendants-appellants for summary judgment dismissing defendant/third-party plaintiff-respondent's common-law claims for contribution and/or indemnification, should be modified, on the law, to grant summary judgment to third-party defendant-appellant JAM Consultants, Inc. dismissing the third-party complaint as against it, and to grant summary judgment to third-party defendant-appellant George E. Berger & Associates, LLC dismissing defendant/third-party plaintiff-respondent's common-law claim for contribution, and otherwise affirmed, without costs.

GONZALEZ, P.J., ANDRIAS, MOSKOWITZ and RENWICK, JJ., concur.

Order, Supreme Court, Bronx County, entered July 16, 2007, modified, on the law, to grant summary judgment to third-party defendant-appellant JAM Consultants, Inc. dismissing the third-party complaint as against it, and to grant summary judgment to third-party defendant-appellant George E. Berger & Associates, LLC dismissing defendant/third-party plaintiff-respondent's common-law claim for contribution, and otherwise affirmed, without costs.

---

[Next page is 401.]