■ AMERICAN HOME ASSURANCE COMPANY et al., Respondents, v NAUSCH, HOGAN & MURRAY, INC., et al., Appellants. [897 NYS2d 413]—

Orders, Supreme Court, New York County (Richard B. Lowe, III, J.), entered April 1, 2009, that denied defendants' motions to dismiss the complaint, unanimously affirmed, with costs.

Plaintiffs are ceding insurers. Defendants were their insurance brokers on certain contracts of reinsurance. In an arbitration related to this action that plaintiffs' reinsurer commenced, the arbitrators ordered the rescission of plaintiffs' contracts of reinsurance. After an 11-day hearing, the arbitrators found that broker Newman had tried to "slip one by" the reinsurer by failing to mention a fundamental change to the contracts of reinsurance in writing to the reinsurer's underwriter. The arbitrators also found that plaintiffs' brokers had hidden a problem about plaintiffs' data from the reinsurer. The arbitrators ruled that the duty of utmost good faith (uberrima fides) and the heightened duty of disclosure that an insurance company and its agents owed to a reinsurer applied. Consequently, rescission was appropriate even if the misrepresentation was merely negligent rather than intentional. As a consequence of the rescission order, plaintiffs had to refund $12,185,253 to the reinsurers, allegedly still owe about $11,278,326 and incurred costs such as attorneys' fees while defending the arbitration. Plaintiffs also remain exposed to liability to their insureds for 100% of any covered losses because plaintiffs no longer have reinsurance.

In this lawsuit, plaintiffs sued their brokers who placed the reinsurance policies, blaming the brokers for the misrepresentations. In the first cause of action, the complaint seeks indemnity from the brokers for the entire repayment to the reinsurers. This cause of action presumes that the underlying arbitration award relied entirely on the misconduct of the brokers and that the insurers' liability to the reinsurers was secondary.

As an alternative, the second cause of action seeks pro rata contribution to the extent that the plaintiffs might have participated in the underlying misrepresentations. The remaining causes of action are for: (1) breach of fiduciary duty, (2) negligence in the placing and administering of the reinsurance for plaintiffs and (3) unjust enrichment.

A motion to dismiss ensued that the motion court denied in its entirety. We now affirm.

The motion court properly upheld the common-law indemnity claim, notwithstanding dicta in the arbitration award that the insurers had committed "intentional and negligent acts, errors and omissions" including "negligent oversight of their agents" (see Pollicino v Roemer & Featherstonhaugh, 277 AD2d 666, 668 [2000]). The body of the decision did not mention negligent oversight and notably, the arbitrators found that the brokers had failed to inform plaintiffs about the problem with the data. Accordingly, the record is sufficient at this juncture to support a

theory that plaintiffs' liability was vicarious only, and therefore an indemnity claim is appropriate (*see Urban v No. 5 Times Sq. Dev., LLC*, 62 AD3d 553, 557 [2009]). Nor was the indemnity claim a device to circumvent the statute of limitations (*see City of New York v Lead Indus. Assn.*, 222 AD2d 119, 127 [1996]).

Defendants argue that the motion court should have dismissed the contribution claim because plaintiffs' liability derives from rescission of a contract and contribution lies only with respect to liability in tort, not in contract. Although research revealed no New York State case law allowing contribution when the underlying action results in the rescission of a contract, plaintiffs do not really seek contribution for rescission. Therefore, under the circumstances of this case, it was proper to uphold the contribution claim.

CPLR 1401 authorizes contribution in cases where "two or more persons . . . are subject to liability for damages for the *same* personal injury, *injury to property* or wrongful death." (Emphasis added.) However, "purely economic loss resulting from a breach of contract does not constitute 'injury to property' " (*Board of Educ. of Hudson City School Dist. v Sargent, Webster, Crenshaw & Folley*, 71 NY2d 21, 26 [1987]; *see also Children's Corner Learning Ctr. v A. Miranda Contr. Corp.*, 64 AD3d 318, 323 [2009]).

Here, there is no question that the brokers are subject to liability for the "same" injury because the brokers stand accused of the same misrepresentations for which the insurer plaintiffs were held responsible in the underlying arbitration. Nor do defendants contest that this case involves "injury to property" (*see Masterwear Corp. v Bernard*, 3 AD3d 305, 307 [2004] ["it is settled that any tortious act (other than personal injury), including conversion, resulting in damage constitutes an 'injury to property' within the meaning of CPLR 1401"]).

Instead, defendants argue that plaintiffs were never subject to "liability for damages" because the monies plaintiffs paid resulted from the rescission of the contract between plaintiff and its reinsurer. As rescission merely returns the parties to the status quo, rather than awarding damages, defendants surmise plaintiffs merely seek the benefit of their bargain, the sort of economic loss that is not apportionable under a contribution theory (*see Children's Corner Learning Ctr.*, 64 AD3d at 323-324).

However, defendants ignore the realities of how reinsurance operates and therefore overlook that plaintiffs have been subject to liability for damages. The arbitration did not involve a typical rescission that returns the parties to the status quo as if the

contract had never occurred. The reinsurance was to provide coverage for a substantial portion of plaintiffs' primary layer risk in connection with its insurance policies. The loss of plaintiffs' reinsurance program left plaintiffs directly liable to the underlying insureds for 100% of the losses on their "all risks" insurance policies covering certain construction businesses located in the Southern Pacific Rim and on certain energy risk insurance policies. The arbitration decision ordering rescission also rendered plaintiffs liable to the reinsurer to reimburse the funds the reinsurer had already paid out under the reinsurance contract. Thus, plaintiffs are not merely deprived of the benefit of their bargain, but have actually had to cover far more of the underlying losses than they would have but for defendants' tortious conduct (*see Ruddy v Lexington Ins. Co.*, 40 AD3d 733, 735 [2007] [retail insurance broker could maintain contribution claim against wholesale insurance broker for failure to obtain sufficient coverage]).

The negligence, breach of fiduciary duty and unjust enrichment claims accrued from the time of injury when the arbitrators ruled in 2007 and were therefore timely (*see IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 140 [2009]; *Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 94 [1993]). Whether the duty of utmost good faith between the parties rose to the level of a fiduciary one depends on the circumstances, and, giving plaintiffs the benefit of every inference, we should not resolve it at this juncture (*see EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19-22 [2005]; *compare Christiana Gen. Ins. Corp. of N.Y. v Great Am. Ins. Co.*, 745 F Supp 150, 161 [1990], *with Compagnie de Reassurance d'Ile de France v New England Reins. Corp.*, 944 F Supp 986, 995-996 [1996]).

In view of the foregoing, it is unnecessary to address the parties' other contentions. Concur—Tom, J.P., Sweeny, Moskowitz, Acosta and Abdus-Salaam, JJ.