**In re G–I HOLDINGS, INC., et al, (f/k/a GAF Corporation), Debtors.**

**Nos. 01–30135(RG), 01–38790 (RG).**

United States Bankruptcy Court, D. New Jersey.

Dec. 14, 2010.

Quinn Emanuel Urquhart Oliver & Hedges, LLP, By: Andrew J. Rossman, Esq., Jeffrey C. Berman, Esq., New York, NY, Special Counsel for Debtors.

Sandak, Hennessey & Greco, LLP, By: Mark J. Kurzman, Esq., Stamford, CT, Outside Counsel for the Debtors.

Fox Rothschild, LLP, By: Jeffrey M. Pollock, Esq., Lawrenceville, NJ, Philip J. Goodman, P.C., By: Philip J. Goodman, Esq., Eric B. Abramson, Esq., Birmingham, MI, Co–Counsel for Claimant, New York City Housing Authority.

## *OPINION*

ROSEMARY GAMBARDELLA,
Bankruptcy Judge.

### MATTER BEFORE THE COURT

The matter before the Court is a Motion objecting to a proof of claim and seeking an order disallowing it pursuant to Federal Rule of Bankruptcy Procedure 3007 and Section 502 of Title 11 of the United States Code (hereinafter "Bankruptcy Code") filed by G–I Holdings, Inc. (hereinafter "G–I Holdings") and ACI, Inc. (hereinafter "ACI"), Debtors in a jointly administered Chapter 11 bankruptcy proceeding. The New York City Housing Authority (hereinafter "Housing Authority") filed the proof of claim in question on October 10, 2008 for asbestos property damage in the amount of $500 million to pay for the remediation of Housing Authority owned housing complexes and buildings where, it is alleged, asbestos-containing products originally manufactured, mined, distributed and sold by Debtors or its predecessors-in-interest were installed (hereinafter "Housing Authority Claim"). On December 10, 2008, the Debtors filed an objection on the ground that the underlying asbestos property damage claim is time barred under relevant New York State law, N.Y.C.P.L.R. § 214–c (McKinney 2008), or alternatively, on the ground that the Housing Authority Claim lacks sufficient detail and documentation in order to state a claim. This Court conducted a hearing on July 22, 2009. Post-hearing, the parties submitted supplemental authorities. The

following constitutes this Court's findings of fact and conclusions of law.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

BACKGROUND

On January 5, 2001 (hereinafter "Petition Date"), G–I Holdings filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Subsequently, G–I Holdings continued to operate its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On August 3, 2001, ACI, a subsidiary of G–I Holdings, also filed a voluntary petition under Chapter 11. On October 10, 2001, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an Order directing the joint administration of the G–I Holdings and ACI bankruptcy cases.

The Official Committee of Unsecured Creditors (hereinafter "Committee") was appointed on January 18, 2001 by the United States Trustee pursuant to Section 1102(a) of the Bankruptcy Code to represent those individuals who allegedly suffered injuries related to asbestos exposure from products manufactured by the predecessors of G–I Holdings. *See* 11 U.S.C. § 1102(a). On October 10, 2001, this Court appointed C. Judson Hamlin as the Legal Representative, a fiduciary to represent the interests of persons who hold present and future asbestos-related claims against G–I.

G–I Holdings is the successor-in-interest to GAF Corporation (hereinafter "GAF"), an entity named in approximately 500,000 asbestos-related lawsuits. *See G–I Hold-*

*ings, Inc. v. Those Parties Listed On Exhibit A (In re G–I Holdings, Inc.),* 313 B.R. 612, 621 (Bankr.D.N.J.2004). The Committee submitted that, as successor-in-interest to GAF, G–I Holdings remained liable for approximately 150,000 asbestos-related lawsuits filed, but unresolved, as of the Petition Date and for unknown numbers of asbestos-related claims that would be filed in the future. *Id.*

In early 1994, GAF Building Materials Corporation, an indirect subsidiary of GAF, formed a new corporation as a wholly-owned subsidiary known as Building Materials Corporation of America (hereinafter "BMCA").[1] *Id.* Pursuant to that transaction, BMCA received substantially all of the assets of GAF's roofing products business and expressly assumed $204 million of asbestos-related liability, with G–I indemnifying BMCA against any additional such liability. *Id.* BMCA, also an indirect subsidiary of G–I Holdings, is the primary operating subsidiary and principal asset of G–I Holdings.[2] *Id.*

A. Global Settlement of Asbestos–Related Lawsuits Lead to a Joint Plan of Reorganization

In early 2007, the Debtors, the Committee and the Legal Representative (collectively, the "Parties") commenced mediation under the auspices of former United States District Judge Nicholas H. Politan in an effort to resolve the asbestos-related lawsuits. Subsequently, the Parties outlined the principal terms of a global settlement and endeavored to complete a final global settlement with comprehensive documentation in the form of a proposed

---

1. BMCA is not a debtor, as defined in Section 101(13) of the Bankruptcy Code, in any bankruptcy proceeding.

2. Although BMCA claims to have never manufactured any products containing asbestos, the company has been named as an additional

defendant in more than one thousand asbestos bodily injury lawsuits against GAF since September of 2000. These claims are based upon theories of successor liability or alter ego. *In re G–I Holdings, Inc.,* 313 B.R. at 621.

Chapter 11 plan and its ancillary documents. To preserve the status quo, the Parties mutually agreed to request a stay of all litigation which would be covered under the final global settlement from this Court and other courts of competent jurisdiction. Although lengthy and initially unsuccessful, the negotiations continued until the parties reached a settlement culminating in an agreement in early August 2008 (hereinafter "Global Settlement").

On August 21, 2008, the Parties filed the Joint Plan of Reorganization of G–I Holdings Inc. and ACI Inc. Pursuant to Chapter 11 of the Bankruptcy Code (hereinafter "Joint Plan of Reorganization") that implemented the Global Settlement of all asbestos-related lawsuits naming G–I Holdings and any other related entities as defendant(s). The Joint Plan of Reorganization provided for the creation of an asbestos trust pursuant to Section 524(g) of the Bankruptcy Code ("Asbestos Trust"), to which all asbestos-related lawsuits against the Debtors now and in the future would be channeled. Pursuant to the Global Settlement, the Asbestos Trust would assume the Debtors' liability for asbestos-related lawsuits, in exchange for cash on the effective date of the Joint Plan of Reorganization in an amount not to exceed $215 million, and a note in the amount of $560 million issued by the reorganized Debtors and secured by a letter of credit. *See* Docket No. 8190, Joint Plan of Reorganization § 4.4. Samuel J. Heyman (hereinafter "Heyman"), owner and Chairman of G–I and BMCA was the Plan Sponsor.

### B. The Bar Date for Proofs of Claim

By order dated September 5, 2008 (hereinafter "Bar Date Order"), this Court fixed October 15, 2008 as the bar date by which all proofs of claim against any interests in the Debtors had to be filed, other than certain "Excluded Claims" as defined in therein. *See* Bar Date Order, Docket No. 8257.

### C. The Second Amended Joint Plan of Reorganization

On December 3, 2008, Debtors filed a Second Amended Joint Plan of Reorganization and an Amended Disclosure Statement. The Second Amended Joint Plan of Reorganization was almost identical to the Joint Plan of Reorganization, but provided for, *inter alia,* an equity infusion of up to $220 million to fund G–I Holdings' liabilities by the Plan Sponsor. *Cf.* Joint Plan of Reorganization § 4.10 and Second Amended Plan § 4.10.

### D. Poor Economic Climate Delays Confirmation Hearing

On or about December 4, 2008, the Debtors submitted the Second Amended Joint Plan and Disclosure Statement to classes of voters as defined therein to accept or reject the Second Amended Joint Plan pursuant to Section 1126 of the Bankruptcy Code. At the conclusion of the solicitation process, the Debtors received sufficient votes in favor of the Second Amended Joint Plan to approve it. Subsequently, the Debtors informed this Court that because of the lack of available credit in the capital markets, the letter of credit required to fund the Asbestos Trust and integral to the confirmation of the Second Amended Plan would be difficult if at all possible to find. As a result, this Court delayed the confirmation hearing and asked the Debtors to advise us of any further developments via monthly status conferences.

In June 2009, the Debtors informed this Court that they could secure the required letter of credit and that the confirmation process could resume. After consultation with the Parties, this Court entered the Amended Plan Confirmation Scheduling

Order (hereinafter "Amended Scheduling Order") on July 1, 2009. Per the Amended Scheduling Order, this Court established September 4, 2009 as the deadline for parties in interest to file objections to confirmation, and established that the confirmation hearing would commence on September 30, 2009. *See* Amended Scheduling Order, Docket No. 9278.

### E. Subsequent Modifications Reflecting Negotiations Among the Parties Eventually Lead to an Eighth Joint Plan of Reorganization

The Parties filed a Third Amended Joint Plan of Reorganization on July 2, 2009, Docket No. 9283, a Fourth Amended Joint Plan of Reorganization on July 28, 2009, Docket No. 9344, a Fifth Amended Joint Plan of Reorganization on August 19, 2009, Docket No. 9401, a Sixth Amended Joint Plan of Reorganization on September 9, 2009, Docket No. 9482, a Seventh Amended Joint Plan of Reorganization on September 30, 2009, Docket No. 9617, and finally an Eighth Amended Joint Plan of Reorganization on October 5, 2009, Docket No. 9644. The District Court for the District of New Jersey and this Court commenced the confirmation hearing on September 30, 2009 and continued it on October 5, 2009, October 6, 2009, October 15, 2009 and November 7, 2009.

After the conclusion of the confirmation hearing on November 7, 2009, Mr. Heyman, the Plan Sponsor, died of natural causes. Subsequently, Ronnie Feuerstein Heyman, Mr. Heyman's wife received all of the same signatory powers as Mr. Heyman pursuant to appropriate corporate resolutions. By Order dated November 12, 2009, Chief Judge Garrett Brown of the District Court for the District of New Jersey and this Court jointly approved the Debtors' Eighth Amended Joint Plan of Reorganization (hereinafter "Confirmation Order"). *See* Confirmation Order, Docket No. 9787; *see also In re G–I Holdings, Inc.,* 420 B.R. 216 (D.N.J.2009).

### F. The Housing Authority Claim

The Housing Authority filed its proof of claim on October 10, 2008 for asbestos property damage in the amount of $500 million to pay for the remediation of Housing Authority owned housing complexes and buildings (hereinafter "Housing Authority Buildings") where, it is alleged, asbestos-containing products originally manufactured mined, distributed and sold by Debtors or its predecessors-in-interest were installed. The Housing Authority further alleges that it incurred costs necessary to abate the hazards by replacing such products with non-toxic substitutes. According to their Statement in support of the Housing Authority Claim, the legal bases for the claim include, *inter alia,* laws of the State of New York and New Jersey permitting property damage claims based on causes of action including negligence, nuisance, restitution, and indemnity. On November 17, 2008, the Housing Authority submitted a First Supplemental Submission, which included additional documents establishing that Housing Authority Buildings were constructed with asbestos containing materials, such as vinyl asbestos floor tile, roofs, thermal system insulation materials and products manufactured by the Debtors' predecessors and other companies. Supplemental documentation filed by the Housing Authority indicates that the alleged asbestos-containing products that are the subject of the claim are non-friable asbestos-containing floor tiles ("VAT") that the Housing Authority installed in some of its buildings.

G. The Respective Positions of the Debtors and the Housing Authority

1. The Debtors' Objection

a. *Debtors Assert that the Housing Authority Claim for Asbestos Property Damage is Time–Barred Under Relevant New York Law*

The Debtors contend that the asbestos property damage claim sounds exclusively in tort and that the applicable statute of limitations relating to the claim is N.Y.C.P.L.R. § 214(4) (McKinney 2008) (hereinafter "C.P.L.R."), the "discovery rule" for property damage claims "caused by the latent effects of exposure to any substance or combination of substances ... upon the property." [3] The Debtors further contend that any action to recover damages for injury to property must therefore be commenced within three years of the accrual of the cause of action, except as otherwise provided in C.P.L.R. § 214–c. Debtors cite *MRI Broadway Rental, Inc., v. U.S. Mineral Products Co.,* 92 N.Y.2d 421, 429, 681 N.Y.S.2d 783, 704 N.E.2d 550 (1998), for the proposition that "[i]n the context of property damage claims arising from the alleged presence of asbestos-containing products, a plaintiff's cause of action accrues when the asbestos-containing products are installed in a building." Debtors' Objection to the New York City Housing Authority Proof of Claim (hereinafter "Debtors' Obj.") at ¶ 10, Docket No. 8625. Debtors contend that pursuant to C.P.L.R. § 214–c, January 5, 1998 is the three year cut-off date (hereinafter "Cut–Off Date") for claims based upon G–I Holdings' Petition Date of January 5, 2001 and argue that the Housing Authority Claim must fail because all of the identified Housing Authority developments were built well before January 5, 1998. *Id.* at ¶ 11. Debtors contend that

accordingly, the Housing Authority cannot find protection under C.P.L.R. § 214–c to sustain its claim. *Id.*

According to the Debtors, the plain text of the 1986 amendments to C.P.L.R. § 214–c, provides that the section has "no effect on property damage claims that were already time-barred as of July 1, 1986 ... [and] were discovered or should have been discovered before that date." *Id.* at ¶ 11. Debtors cite *Germantown Central Sch. Dist. v. Clark, Clark, Millis & Gilson,* 100 N.Y.2d 202, 206–207, 761 N.Y.S.2d 141, 791 N.E.2d 398 (2003) for the proposition that C.P.L.R. § 214–c is inapplicable to actions for incomplete abatement of asbestos property damage where

> plaintiff's property damage claim involves no additional damage to its building since the original implantation of the harmful substance ... the injury cannot be said to have resulted from the latent effects of exposure to a toxic substance ... [T]he harm to plaintiff's property occurred upon installation of the asbestos in the building ... and was constant thereafter.

*Id.* at ¶ 12. The Debtors further posit that even if C.P.L.R. § 214–c were applicable, it would not revive the Housing Authority's allegedly expired claim, because the Housing Authority knew, or through the exercise of reasonable due diligence, should have known, of its alleged asbestos-related property damage "injury" well before the Cut–Off Date of January 5, 1998, based upon publications describing the extensive use of asbestos containing materials in New York City buildings and numerous lawsuits regarding such materials. *Id.* In further support of this argument, the Debtors also contend that laws have been

---

**3.** The parties agree that as the properties on which the Housing Authority bases its claim are all situated in New York, any property damage claim, including any applicable statutes of limitation, will be governed by New York law.

in place in New York City since at least 1985 establishing procedures for the abatement of asbestos in connection with the demolition or renovation of premises which would cause a disturbance of the asbestos. *Id.* at ¶ 13.

Debtors also contend that to the extent that the Housing Authority might recast its allegedly time-barred asbestos property damage claim as an equitable claim sounding in restitution or indemnity, the Housing Authority Claim must still fail because, citing *MRI Broadway Rental, Inc.,* 242 A.D.2d 440, 445, 662 N.Y.S.2d 114 (N.Y.App.Div.1997) (quoting *City of New York v. Lead Industries Ass'n, Inc.,* 182 Misc.2d 835, 700 N.Y.S.2d 361 (N.Y.Sup. Ct.1999) and *888 7th Ave. Assoc. Ltd. Partnership v. AAER Sprayed Insulations, Inc.,* 199 A.D.2d 50, 51, 605 N.Y.S.2d 25 (N.Y.App.Div.1993)), New York courts have dismissed such efforts "to circumvent the statute of limitations bar on … tort claims by merely recasting them in indemnity and restitution terminology." *Id.* at ¶ 14. Debtors also contend that the Housing Authority neither identifies a single cost it has incurred or anticipates incurring with the abatement of any asbestos containing products for which the Debtors are allegedly responsible nor alleges when any such payments were made, thus failing to show that its indemnification or restitution claims would be timely. *Id.* at ¶ 14.

b. *Debtors Assert that the Housing Authority Claim Contains Insufficient Detail and Documentation from which Debtors can Evaluate the Nature and Extent of the Property Damage Alleged*

The Debtors also argue that the Housing Authority Claim provides insufficient information concerning what asbestos-containing products were allegedly installed in which Housing Authority buildings." Debtors' Obj. at ¶ 5. The Debtors further argue that the Housing Authority Claim does not specify what actions it took or might be required to abate asbestos-containing products. *Id.* Debtors contend that because the Housing Authority omitted this information, it is impossible for them to present other defenses to the claim. *Id.* at ¶ 7. The Debtors specifically reserved their right to later amend or supplement its objection to add any and all other objections and defenses they might have against the Housing Authority Claim, including without limitation, the defenses of estoppels, *res judicata,* claim preclusion, accord and satisfaction, release, waiver, laches or assumption of risk, or to assert that the claims are barred by asbestos property damage settlements reached between G–I Holdings or its predecessors on the one hand, and on the other hand, among others, the City of New York, the Board of Education of the City of New York and the Port Authority of New York and New Jersey. *Id.*

Debtors support their argument that the Housing Authority should have acted sooner given that in 1984, the City of New York and the New York City Board of Education sued manufacturers of asbestos-containing products, including GAF Corporation, for asbestos property damage, with additional asbestos property damage law suits commenced by New York City in 1987 and the Port Authority of New York and New Jersey in 1991. Debtors' Obj. at ¶ 13. The Debtors also assert that the Housing Authority first implemented an asbestos abatement program for its properties in the late 1980's, citing the handbook that the Housing Authority provides to its residents. *See* Debtors' Obj. at fn. 5.

The Debtors also contend that the Housing Authority Claim is pleaded so inadequately as to provide an independent basis for disallowing it in its entirety. *Id.* at ¶ 16. The Debtors allege that the Housing Authority's representative documents

"provides no indication of what products were installed, nor does it indicate the nature and extent of the damages ... the costs allegedly incurred or may in the future be incurred in connection with abating any alleged asbestos-containing building materials supplied by the Debtors" that the Housing Authority seeks to collect. *Id.* at ¶ 16. The Debtors contend that the Housing Authority Claim fails to cite or support a single instance of costs that it has incurred and will continue to incur to abate the potential hazards caused by the presence of Debtors' building materials in the Housing Authority Buildings. *Id.* at ¶ 16–17.

2. The Housing Authority's Response

a. *Response to the Debtors' Assertion that the Claim Contains Insufficient Detail*

The Housing Authority argues that it followed the instructions as set forth on the Debtors' approved proof of claim form, and that its proof of claim and attachments are in conformance with Federal Rule of Bankruptcy Procedure 3001(b) and provide specific information including the housing site, the number of buildings located within each complex, the number of stories for the buildings, the total square footage and the date of completion of construction, and a specific address or location for each, as well as "representative documents" for each type of asbestos-containing product at issue. The Housing Authority indicates that paragraph 8 of the claim form instructions allow a claimant to provide a summary, if the documents supporting a claim are voluminous, as they are here. Re-

sponse of New York City Housing Authority to Debtors' Objection to the New York City Housing Authority Proof of Claim (hereinafter "Housing Authority's Response") at ¶¶ 6–8.[4] The Housing Authority also contends that it provided a statement as to the nature of its claim, the theories of liability and basis for the damages alleged. *Id.* The Housing Authority further alleges that the Debtors have failed to conduct the necessary due diligence to evaluate the claim, or even to request additional information required to conduct any principled evaluation of its claim. *Id.* at ¶ 7.

b. *Response to Debtors' Assertion that the Housing Authority Claim is Barred by the New York Statute of Limitations*

The Housing Authority argues that its claim is recognized under New York law as a claim for true restitution and indemnity, or as a claim made in equity and not in law as recognized in *City of New York v. Lead Industries Association, Inc.,* 182 Misc.2d 835, 700 N.Y.S.2d 361 (N.Y.Sup.Ct.1999). *See id.* at ¶ 19. The Housing Authority posits that such claims for true restitution and indemnity do not arise from bodily injury but rather from quasi-contract, and such claims are not ripe until a claimant, like the Housing Authority, has expended funds to remediate or to remove the asbestos products that G–I Holdings or its predecessors manufactured. *Id.* The Housing Authority then characterizes its claims as further sounding in ongoing nuisance and restitution. As such, it argues that C.P.L.R. § 214(4) is inapplicable because

---

**4.** The Housing Authority has also submitted Affidavits of Robert Schmahl, Anil Nirody and Henry Zalak, employees of the Housing Authority, which Respondents asserts each have direct personal experience and knowledge concerning the process of material specification approval and installation of building materials in Housing Authority complexes and

buildings. *See* Housing Authority's Response, Exhibits 8, 9 and 10. The Housing Authority also submitted an Affidavit of Nicholas R. Ganick, a professional engineer employed by Gobbell Hayes Partners Inc. which it purports to quantify the asbestos containing building materials installed throughout its complexes and buildings. *Id.* at Exh. 11.

nuisance and restitution claims are renewed every day as provided in common law, citing *Jensen v. General Electric Co.*, 82 N.Y.2d 77, 603 N.Y.S.2d 420, 623 N.E.2d 547 (1993); *Town of New Windsor v. Tesa Tuck, Inc.*, 919 F.Supp. 662 (S.D.N.Y.1996); *Stanton v. Town of Southold*, 266 A.D.2d 277, 278, 698 N.Y.S.2d 258 (N.Y.App.Div.1999); *Condello v. Town of Irondequoit*, 262 A.D.2d 940, 941, 693 N.Y.S.2d 775 (N.Y.App.Div.1999); *State v. Schenectady Chemicals, Inc.*, 479 N.Y.S.2d 1010, 103 A.D.2d 33 (N.Y.App.Div.1984). *Id.* At ¶ 20.

The Housing Authority then concedes that C.P.L.R. 214(4) is the applicable statute of limitations for when a claim in tort accrues, but argues that the courts in New York have adopted an "emergency assistance doctrine" as set forth in *Restatement (First) of Restitution, Section 115, citing Chase Manhattan Bank v. T & N PLC*, 905 F.Supp. 107, 123 (S.D.N.Y.1995). *Id.* at ¶ 21. This doctrine provides that claimants with "true" causes of action based on indemnity and restitution are governed by a six-year statute of limitations pursuant to C.P.L.R. 213[2], citing *T & N PLC*, supra; *Chemical Bank v. Stahl*, 272 A.D.2d 1, 712 N.Y.S.2d 452 (N.Y.App.Div. 2000); *City of New York v. Lead Industries Association*, 222 A.D.2d 119, 130, 644 N.Y.S.2d 919 (1996) (*Lead Industries II*); and *Joseph McDermott v. City of New York*, 50 N.Y.2d 211, 218, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980). *Id.* at ¶ 22. The Housing Authority also cites Second and Third Circuit Courts of Appeals and Supreme Court cases in support of its proposition that an injunctive demand to compel a debtor to take remedial action of a hazardous substance like asbestos is precisely the kind of hazardous risk that should not be abandoned and foisted upon the public: *In re Chateaugay Corp.*, 944 F.2d 997, 1009 (2d Cir.1991); *In re Quanta Resources*, 739 F.2d 912 (3d Cir.1984); and *Midlantic National Bank v. New Jersey*

*Dept. of Env. Pro.*, 474 U.S. 494, 507, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). *Id.*

It also posits that indemnity is a contract implied by law to prevent unjust enrichment where a party fails to perform its duty, that duty is performed by another party and that the cause of action for indemnification is a separate substantive claim, independent of the underlying wrong such as the creation of a nuisance and a failure to abate, citing *Restatement of Restitution § 76; City of New York v. Keene*, 132 Misc.2d 745, 505 N.Y.S.2d 782 (N.Y.Sup.Ct.1986); *McDermott v. City of New York*, 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980); *State v. Stewart's Ice Cream Co.*, 64 N.Y.2d 83, 88, 484 N.Y.S.2d 810, 473 N.E.2d 1184 (1984); and *State of New York v. Speonk Fuel, Inc.*, 3 N.Y.3d 720, 723, 786 N.Y.S.2d 375, 819 N.E.2d 991 (2004). *Id.* at ¶¶ 23–25. The Housing Authority then contends that the statute of limitations for restitution is six years, and as with indemnification, a separate statute of limitations begins to run with each new expenditure. *Id.* at ¶ 24.

The Housing Authority argues that *MRI Broadway Rental, Inc. v. U.S. Mineral Products Co.*, 242 A.D.2d 440, 662 N.Y.S.2d 114 (N.Y.App.Div.1997), which the Debtor cites, is distinguishable, because in that case, no duty to any third party was alleged; defendants there as alleged had not failed to perform a duty toward anyone other than the plaintiffs. It then clarifies that its claim is based on the Debtors' creation of a hazard adversely affecting the members of the public residing in Housing Authority Buildings throughout New York City and arises from its duty to investigate and address environmental threats for the protection of those residents. The Housing Authority then seeks to distinguish *888 7th Ave. Assoc. Ltd. Partnership v. AAER Sprayed Insulations, Inc.*, 199 A.D.2d 50, 51, 605

N.Y.S.2d 25 (N.Y.App.Div.1993) on the basis that "[plaintiff's] causes of action for restitution and indemnification were properly held to be not viable on the ground that defendants' only duty to third parties would be by reason of other causes of action (citing *City of New York v. Keene Corp.*, 132 Misc.2d 745, 505 N.Y.S.2d 782, *aff'd*, 129 A.D.2d 1019, 513 N.Y.S.2d 1004 (N.Y.App.Div.1987)), all of which [were] time barred." *Id.* at ¶ 30.

### 3. The Debtors' Reply

Debtors allege that there is insufficient evidence to establish that VAT is a safety threat. Debtors contend that none of the studies, reports and recommended work practices submitted by the Housing Authority suggests that VAT, or VAT manufactured by the Debtors, is contaminating Housing Authority Buildings by emitting asbestos fibers or creating a present health hazard to Housing Authority residents. *See* Docket No. 9290, Reply in Further Support of Debtors' Objection to the New York City Housing Authority Proof of Claim (hereinafter "Debtors' Reply") at ¶¶ 5 and 7; *see also* Housing Authority Residents Handbook at p. 39, Debtors' Obj. Exh. A). The Debtors contend that "the mere presence of VAT in NYCHA buildings creates no hazard to . . . residents." *Id.* at ¶ 5. Debtors contend that it is the "Housing Authority's policy to leave undisturbed VAT in Housing Authority Apartments, unless at the time a resident moves out of an apartment, the VAT is found to be in need of replacement." *Id.* at ¶ 6 (citing Aff. of Brian Clarke at ¶ 4, Housing Authority's Response to Debtors' Objection (hereinafter "Housing Authority's Response") Exh. 1 (Brian Clarke is the Assistant Deputy General Manager for Support Services of Operations for the Housing Authority)). The Debtors argue that in contrast "the Housing Authority is required to abate lead paint from all friction and impact surfaces upon apartment turnover." *Id.* at

¶ 6; *see also* Housing Authority Residents Handbook at p. 37. Debtors argue that VAT has been classified historically as a non-hazardous product, and does not release asbestos fibers under normal use. *Id.* at ¶ 6. Debtors cite as supportive of their argument 40 C.F.R. §§ 61.141, 61.145(c)(1)(i) (1990) and *In re Armstrong World Industries, Inc.*, 285 B.R. 864, 867 (Bankr.D.Del.2002). Further, Debtors argue that despite having purportedly spent almost $5.5 million in monitoring the air in Housing Authority Buildings since October 2000, the Housing Authority has not submitted any sampling results indicating the presence of asbestos fibers in its buildings. *See id.* at ¶ 7.

Debtors argue that the Housing Authority knew that asbestos-containing products were installed in its buildings, and that removal and replacement of such products were required under certain circumstances, thus triggering the running of the statute of limitations. *Id.* at ¶ 12. Debtors cite *W.R. Grace*, 397 B.R. 701, 709–10 (Bankr.D.Del.2008), *W.R. Grace II*, 2008 WL 4571559 at *1–2 (Bankr.D.Del. Oct.14, 2008) (applying Delaware and California law); *Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson, AIA*, 100 N.Y.2d 202, 206–207, 761 N.Y.S.2d 141, 791 N.E.2d 398 (2003); and *MRI Broadway Rental, Inc., v. U.S. Mineral Prod. Co.*, 92 N.Y.2d 421, 429, 681 N.Y.S.2d 783, 704 N.E.2d 550 (1998).

Debtors allege that the Housing Authority is attempting to revive a time-barred tort claim by recasting it as an equitable claim sounding in indemnity or restitution. Debtors argue that New York courts have consistently rejected efforts by plaintiffs to recast asbestos-related tort claims as ones for equitable restitution and indemnification in order to revive time-barred claims. Debtors' Reply at ¶ 13. Debtors cite by example as supportive of their argument:

*888 7th Ave. Assoc. Ltd. v. AAER Sprayed Insulations, Inc.*, No. 11579/91 (N.Y.Sup. Ct. Feb. 24, 1992), *aff'd*, 605 N.Y.S.2d 25, 199 A.D.2d 50 (N.Y.App.Div.1993); *MRI Broadway Rental, Inc., v. U.S. Mineral Prod. Co.*, 242 A.D.2d 440, 662 N.Y.S.2d 114 (N.Y.App.Div.1997), *aff'd*, 92 N.Y.2d 421, 429, 681 N.Y.S.2d 783, 704 N.E.2d 550 (1998); *Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson, AIA*, 294 A.D.2d 93, 743 N.Y.S.2d 599 (N.Y.App.Div. 2002), *aff'd*, 100 N.Y.2d 202, 206–207, 761 N.Y.S.2d 141, 791 N.E.2d 398 (2003).

Debtors further allege that the Housing Authority relies on four cases, *City of New York v. Lead Indus. Ass'n*, 1991 WL 284454 (N.Y.Sup.Ct. Dec. 23, 1991) (*"Lead Industries I"*); *City of New York v. Lead Indus. Ass'n*, 190 A.D.2d 173, 597 N.Y.S.2d 698 (N.Y.App.Div.1993) (*"Lead Industries II"*); *City of New York v. Lead Indus. Ass'n*, 222 A.D.2d 119, 644 N.Y.S.2d 919 (N.Y.App.Div.1993) (*"Lead Industries III"*); and *City of New York v. Lead Indus. Ass'n*, 182 Misc.2d 835, 700 N.Y.S.2d 361 (N.Y.Sup.Ct.1999) (*"Lead Industries IV"*) (collectively, *"Lead Industries Cases"*), for the proposition that its proof of claim is not time barred, and that these *Lead Industries* Cases created an "Emergency Assistance Doctrine" allowing it to first take immediate preventative action in the interests of public safety, then later bring an equitable claim for reimbursement (based on either indemnification or true restitution) and that such equitable claims are governed by a six year statute of limitations pursuant to C.P.L.R. § 213(2). Debtors' Reply at ¶ 19.

Debtors allege that these *Lead Industries* Cases are inapplicable because no emergency existed here. According to the Debtors, in *Lead Industries* I, the lead paint chips created an immediate safety and health problem that required protective action, including abating the hazards, testing the children at risk of lead poisoning and treating its victims. Debtors contend that VAT does not present the same type of immediate danger as lead paint because the Housing Authority lacks urgency in removing the tiles. Debtors argue that this claim is for precautionary removal at the convenience of the Housing Authority, and that such precautionary removal demonstrates that the mere presence of VAT does not constitute an "emergency" which would require immediate action in the interests of public safety.

The Debtors urge this Court to construe the *Lead Industries* Cases narrowly. Debtors contend that these cases differ factually from the instant case not only because lead paint presents a different health risk than VAT, but also because the plaintiffs in the *Lead Industries* Cases sought indemnity premised on their discharge of duties owed by them and the manufacturers of lead paint to third parties, namely children exposed to or injured by lead paint. Debtors' Reply at ¶ 19. Debtors argue that both restitution and indemnification claims require an initial showing that the Debtors owe a legal duty to the public or to third parties that the Housing Authority has discharged. *Id.* at ¶ 20. In response to the Housing Authority's contention that the Debtors owe a duty to the public to abate a nuisance, the Debtors contend that New York courts do not allow basing a claim for restitution or indemnity on an ongoing nuisance theory. *Id.* at ¶ 20. Debtors contend that in *Jensen v. General Elec. Co.*, 82 N.Y.2d 77, 84–85, 603 N.Y.S.2d 420, 623 N.E.2d 547 (1993), the New York Court of Appeals held that plaintiffs seeking to recover from injury to property may not use the doctrine of ongoing nuisance and other continuing wrong theories, subsequent to the enactment of C.P.L.R. 214–c. Debtors' Reply at ¶ 20. Debtors further argue that "there is also significant authority explicit-

ly holding that no duty exists for an asbestos manufacturer to remove asbestos" and cite as supportive of their argument, *Board. of Ed. of City of Chicago v. A, C and S, Inc.*, 131 Ill.2d 428, 466, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989); *Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F.Supp. 126, 134 (D.N.H.1984). *Id.* at ¶ 21.

Debtors dispute the Housing Authority's contention that they have created an environmental hazard, which they have a duty to abate. *Id.* at ¶ 22. Debtors argue that CERCLA[5] does not create a private right of action for a party seeking recovery for costs incurred under circumstances where the release or threatened release of hazardous substances is from a product that is part of the structure of the building and the resulting exposure is wholly contained within the structure. *Id.* at ¶ 22. As supportive of their argument, Debtors cite *Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 851–852 (7th Cir. 2008); *3550 Stevens Creek Assocs. v. Barclays Bank of Ca.*, 915 F.2d 1355, 1364–1365 (9th Cir.1990); and *Nat. R.R. Passenger Corp.*, 819 F.Supp. 1271, 1278 (S.D.N.Y.1993).

Debtors contend that the Housing Authority cannot possess a claim for indemnification because there is no identifiable third party that either has been injured or faces an imminent threat to injury due to the VAT manufactured by the Debtors. *Id.* at ¶ 24. Rather, Debtors contend that the instant case differs from the Housing Authority's cited cases where the City's indemnification claims were allowed, arguing that the Housing Authority is the injured party, and has not spent funds on behalf of any third party, citing *McDermott v. City of New York*, 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980);

*New York v. Hickey's Carting Inc.*, 380 F.Supp.2d 108 (E.D.N.Y.2005); *New York v. Stewart's Ice Cream Co.*, 64 N.Y.2d 83, 484 N.Y.S.2d 810, 473 N.E.2d 1184 (1984). *Id.* at ¶ 24.

4. The Housing Authority's Sur–Reply

The Housing Authority alleges that the cases relied upon by the Debtors, *MRI*, and *Germantown*, "have been found inapplicable and non-dispositive to claims exactly like those brought by [the Housing Authority] in this proceeding." Sur–Reply on Behalf of New York City Housing Authority (hereinafter "Housing Authority's Sur–Reply") at ¶ 4. The Housing Authority contends that the *Lead Industries* Cases specifically distinguished *MRI* and *Germantown*, and recognized claims for equitable restitution and indemnification as suitable causes of action for recovery from defendants whose wrongful conduct unjustly enriched them. *Id.* at ¶ 4. The Housing Authority asserts that *888 7th Ave. Assocs. Ltd. Partnership v. AAER Sprayed Insulations, Inc.*, 199 A.D.2d 50, 605 N.Y.S.2d 25 (N.Y.App.Div.1993) should not apply because the court in *Lead Industries III*, 222 A.D.2d at 127, 644 N.Y.S.2d 919, found that *888 7th Ave. Assocs. Ltd. Partnership* was inapplicable in cases where "true restitution and indemnification" claims were asserted. *Id.* at ¶ 8.

The Housing Authority contends that New York courts allow the use of equitable restitution and indemnification claims to prevent "unjust enrichment," especially where public health hazards are present." *Id.* at ¶ 6. It further asserts that "common law indemnification is based upon 'simple fairness,' recognizing that a person who has discharged a duty which is owed by him, but which as between himself and another, should have been discharged by the other, is entitled to indemnification."

**5.** Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"),

42 U.S.C. §§ 9601–9675 (2005).

*Id.* at ¶ 7 (citing *Nelson v. Jereissati,* 2009 WL 453219, *7 (N.Y.Sup.Ct. Feb. 10, 2009)).

Citing *Allen v. First Wallstreet Settlement Corporation,* 130 A.D.2d 824, 826, 514 N.Y.S.2d 726, 728 (N.Y.App.Div.1987); *Pereira v. Centel Corp.,* 134 B.R. 776, 788 (Bankr.S.D.N.Y.1991), the Housing Authority further alleges that New York courts apply a liberal standard in determining whether a claim may go forward where different statutes of limitations might apply. Housing Authority's Sur–Reply at ¶ 5. Citing *Lead Industries III,* 222 A.D.2d at 128, 644 N.Y.S.2d 919, the Housing Authority argues that the *Lead Industries* Cases recognize that "equitable restitution and indemnification are flexible remedies to be fashioned in light of the particular equities involved." *Id.* at ¶ 6. The Housing Authority contends that the Appellate Division in *Lead Industries III,* 222 A.D.2d at 128, 644 N.Y.S.2d 919, "specifically explained the appropriateness of using an indemnity cause of action to right these kinds of wrongs." *Id.* at ¶ 9. Further, the Housing Authority contends that "in *Lead Industries III,* the court noted that the equitable remedies of restitution and indemnification were well suited to recovering the reasonable cost of abating both lead paint and asbestos." *Id.* at ¶ 11 ("it may also be noted that restitution has been characterized as a particularly relevant remedy for the costs of abatement of asbestos, a problem of similar wide-spread consequence as lead paint." *Lead Industries III,* 222 A.D.2d at 128, 644 N.Y.S.2d 919).

The Housing Authority argues that "identical rulings set forth in *Lead Industries III,* adopted by Justice Helen E. Freedman in *Lead Industries IV,* have been relied upon by New York Courts up through 2009." *Id.* at ¶ 12. The Housing Authority cites *City of New York v. College Point Sports Assoc.,* 61 A.D.3d 33, 876 N.Y.S.2d 409, 422 (N.Y.App.Div.2009), as a case which relied upon *Lead Industries III,* and upheld the applicability of true and independent restitution and indemnity claims brought by the City of New York to recover the costs of cleaning up property contaminated by the defendant. *Id.* at ¶ 13. The Housing Authority argues that *Nelson v. Jereissati,* 2009 WL 453219 (N.Y.Sup.Ct. Feb. 10, 2009), further supports the equitable basis of its claims. *Id.* at ¶ 14. The Housing Authority contends that *Lead Industries, supra,* and *McDermott v. City of New York,* 50 N.Y.2d 211, 217, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980), were cited in *Helfand v. Sessler,* 194 Misc.2d 38, 753 N.Y.S.2d 300 (N.Y.Civ. Ct.2002), a case which, according to the Housing Authority, corroborates its position that the equitable remedy of indemnification is the proper basis for this claim." *Id.* at ¶ 15.

The Housing Authority contends that the Debtors have done nothing to refute the findings of Richard Hatfield, former advisor and consultant to the Environmental Protection Agency's Rule Making Committee on the Asbestos Hazards Emergency Response Act. The Housing Authority rejects the Debtors' assertion that VAT is not hazardous. *Id.* at ¶ 16; *see also* Housing Authority's Reply Exh. 14, Affidavit of Richard Hatfield (attesting to the release of asbestos fibers into the ambient air from VAT creating contamination from asbestos-containing floor titles). The Housing Authority also contends that Debtors have failed to dispute the report entitled "Results of Floor Title Experiments Van Nuys Middle School Los Angelos Unified School District" at p. 7. *Id.* at ¶ 16; *see also* Housing Authority's Reply Exh. 13 (report prepared by William M. Ewing, CIH, which, according to the Housing Authority, demonstrates that ordinary use and maintenance of vinyl asbestos floor tile causes "a significant airborne exposure to asbestos fibers").

The Housing Authority contends that it had asbestos dust samples taken from its buildings where Debtors' floor tiles were installed and analyzed by Mr. Hatfield, and that "dust samples from GAF asbestos-containing floor tile installed in the Millbrook, Thomas Jefferson, Lafayette Gardens and Independence Complexes, analyzed by transmission electron microscopy ("TEM"), demonstrate conclusively that VAT installed in Housing Authority Buildings has released 'high levels' of asbestos fibers (billions of asbestos structures), which according to the Housing Authority is clear evidence of contamination from these products. *Id.* at ¶ 18. Citing October 18, 1999 Report of Richard L. Hatfield, Housing Authority's Sur–Reply Exh. 5), the Housing Authority contends that the dust samples in the study were taken in areas where floor tiles were clearly cracked, broken, scratched or deteriorated." *Id.* at ¶ 18. The Housing Authority contends that the Debtors cannot dispute that the dust came from their products as the "VAT installed in four complexes studied by Mr. Hatfield was supplied by Debtors' predecessors, GAF, Matico, Mastic Tile Division, and the Ruberiod Co. *Id.* at ¶ 19. The Housing Authority contends that after the Report of Richard Hatfield, finding "high levels of contamination," it began abating VAT from thousands of apartments and, through 2008, had removed and replaced 6,151,069 square feet of VAT at a cost of millions of dollars." *Id.* at ¶ 20.

The Housing Authority contends that the Debtors have created an environmental hazard which they have a duty to abate. *Id.* at ¶ 22. The Housing Authority cites *In re Mushroom Transportation Co.,* 382 F.3d 325, 337 (3d Cir.2004); *In re Sheckard,* 394 B.R. 56, 66 (E.D.Pa.2008), in support of their argument that the doctrine of laches should not apply because the Debt-

ors have provided no evidence of prejudice. *Id.* at ¶¶ 25–26 (citing). *Id.* at ¶ 25.

## H. The July 22, 2009 Hearing

At the July 22, 2009 Hearing, the Debtors and the Housing Authority reiterated the arguments already submitted to this Court. Debtors' counsel emphasized that the Housing Authority may not recast its time-barred asbestos-related tort claims as ones for equitable restitution and indemnification purely in order to circumvent the statute of limitations, citing *888 7th Ave. Assoc. Ltd. v. AAER Sprayed Insulations, Inc.,* No. 11579/91 (N.Y.Sup.Ct. Feb. 24, 1992), *aff'd,* 605 N.Y.S.2d 25, 199 A.D.2d 50 (N.Y.App.Div.1993); *MRI Broadway Rental, Inc., v. U.S. Mineral Prod. Co.,* 242 A.D.2d 440, 662 N.Y.S.2d 114 (N.Y.App.Div.1997), *aff'd,* 92 N.Y.2d 421, 429, 681 N.Y.S.2d 783, 704 N.E.2d 550 (1998). *Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson, AIA,* 294 A.D.2d 93, 743 N.Y.S.2d 599 (N.Y.App.Div. 2002), *aff'd,* 100 N.Y.2d 202, 206–207, 761 N.Y.S.2d 141, 791 N.E.2d 398 (2003). *See* July 22, 2009 Hearing Transcript (hereinafter "Hr'g Tr.") at p. 60. Debtors' counsel disagreed with Justice Freedman's decision in *Lead Industries. See id.* at p. 67. He also argued that the *Lead Industries* Cases should be distinguished because asbestos does not present the same type of danger as lead paint. *See id.* at p. 67. Debtors' counsel then argued that the Housing Authority's equitable claim should fail because a claim for indemnification requires two duties: one of public safety on the part of the Housing Authority to the tenants which it identified, and two, there must be a concomitant duty on the part of the Debtors, which it does not identify. *See id.* at p. 70. Finally, Debtors' counsel argued that in order to be indemnified, one must be liable to a third party, and the Housing Authority never pleaded that a third party obtained a judgment against it. *See id.* at pp. 71–72.

Then, Housing Authority's counsel argued that the *Lead Industries* Cases are good law and still precedential in New York, citing *City of New York v. College Point, supra,* for the proposition that common law indemnity and restitution are discreet causes of action. *See id.* at pp. 75–76. Housing Authority's counsel stressed that because the motion being argued was akin to a summary judgment motion, the Housing Authority was only required to submit some amount of proof, and he argued that Housing Authority had met its burden. *See id.* at p. 78. He argued that although the Housing Authority had no statutory duty to abate the VAT, they were obligated to do the abatement because of public health concerns; he also argued that the Debtors were strictly liable under New York's products liability laws. *See id.* at p. 81.

Housing Authority's counsel stated to the Court that he believed that all of Housing Authority's pure tort claims would be time barred. *See id.* at p. 82. He further stated that not all the VAT products in the Housing Authority Buildings were produced by G–I, and therefore "we spent $40 million and only some percent is attributable to GAF now G–I ..." *See id.* at pp. 83–84. With respect to indemnification, he also admitted that some portion of the Housing Authority's Claim was time barred, providing that "one of the questions there is going to be if a claim occurred more than six years or three years, depending on which statute of limitations you use ... prior to the 2001 filing date, should that claim be time barred? My guess is it probably should." *See id.* at p. 91.

### I. Post–Hearing Supplemental Authorities

After this Court conducted a hearing on the asbestos property damage claim on August 4, 2010, the Housing Authority filed a Supplemental Response, wherein it informed this Court that decisions in New York courts subsequent to July 22, 2009 may have a significant impact on this Court's decision. *See* Docket No. 10278. On that basis, the Housing Authority requested permission to present renewed oral argument and a supplemental brief. On August 13, 2010, Debtors submitted a letter response to the Housing Authority's August 4th Letter, wherein the Debtors stated their opposition to additional briefing and argument. *See* Docket No. 10289. On August 16, 2010, this Court held a conference call to discuss whether additional briefing and renewed oral argument on these issues would be allowed. At the conclusion of that conference call, this Court concluded that it would not allow renewed oral argument, but would allow additional briefing in the form of supplemental letter briefs.

On August 24, 2010, the Housing Authority filed a response and therein the Housing Authority presented their position on how recent decisions could affect the Court's analysis in the present case. *See* Housing Authority's August 24, 2010 Letter Response (hereinafter "Housing Authority's Letter Response"), Docket No. 10291. In the Housing Authority's Letter Response, the Housing Authority asserted that *American Home Assurance Co. v. Nausch, Hogan & Murray, Inc.,* 71 A.D.3d 550, 897 N.Y.S.2d 413 (N.Y.App.Div.2010) and *Aldrich v. Marsh & McLennan Co., Inc.,* 2009 WL 3152794 (N.Y.Sup.Ct. Sep. 29, 2009) support their position that its indemnification claim is not time barred because they "affirm the vitality of *Lead Industries II* and *McDermott.*" *See id.* at p. 2. Specifically, the Housing Authority notes that the court in *Aldrich* followed *McDermott* in characterizing indemnification claims as separate causes of action that are independent of the underlying

wrong, and in finding that indemnification claims do not accrue until the party seeking indemnification pays for the injury. The Housing Authority also argues that *Jeld–Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 121 (3d Cir. 2010), is not applicable to the present case because the holding therein was limited to claims arising in tort, and because the *Grossman* decision did not apply when a claim arises in the context of an environmental cleanup. *See* Housing Authority's Letter Response (citing *Grossman's Inc.*, 607 F.3d 114, fn. 11).

On September 8, 2010, Debtors filed a response wherein they argued that *American Home Assurance, supra*, and Aldrich, *supra*, do not support the Housing Authority's effort to revive a time-barred asbestos property damage claim by recasting it as one for indemnity. *See* Debtors' September 8, 2010 Letter Reply (hereinafter "Debtors' Letter Reply") at pp. 2–4. The Debtors also argue against the Housing Authority's assertion that every time it incurs a remediation claim against the Debtors, a new statute of limitations arises, controverting the plain language of C.P.L.R. § 214. The Debtors also argue that *In re Grossman, supra*, is dispositive because it forecloses the Housing Authority's ability to argue that its claim arose post-petition. *See id.* at p. 4.

## LEGAL DISCUSSION

### A. Jurisdiction

Pursuant to 28 U.S.C. § 157, adjudication of a claim arising in a bankruptcy proceeding is a core matter. *See generally* 28 U.S.C. § 157(b) (2008). Further, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. *See* 28 U.S.C. § 1334 (2008). Finally, venue is proper pursuant to 28 U.S.C. § 1409(a) (2008).

### B. Allowance of Claims

The allowance of claims is governed by Section 502 of the Bankruptcy Code which provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a) (2008). Federal Rule of Bankruptcy Procedure 3007 provides that an objection to the allowance of a claim must be in writing and filed, and that a copy of the objection must be mailed or otherwise delivered to the claimant at least 30 days prior to the hearing. Fed. R. Bankr.P. 3007 (2008). If a party in interest objects, then pursuant to 11 U.S.C. § 502(b)(1), a claim will not be allowable if it is "unenforceable against the debtor, and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1) (2008).

In order to determine whether claims are enforceable for bankruptcy purposes § 502 relies upon non-bankruptcy law. *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 245, n. 66 (3d Cir.2005) (citing 4 *Collier on Bankruptcy* ¶ 502.03[2][b][ii] (15th rev. ed. 2003)). As such, "[a] claim against the bankruptcy estate 'will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy.'" *Id.* (citing *United States v. Sanford*, 979 F.2d 1511, 1513 (11th Cir. 1992)). The ultimate effect of Section 502 of the Bankruptcy Code "is to provide a bankruptcy trustee with the same rights and defenses to claims as held by the debtor prior to bankruptcy." *Id.* (citation omitted).

With respect to the burden of proof for claims brought in the bankruptcy

court pursuant to § 502(a), the Third Circuit Court of Appeals has explained that the burden of proof "rests on different parties at different times." *See In re Allegheny International, Inc.,* 954 F.2d 167, 173 (3d Cir.1992). The claimant must initially "allege facts sufficient to support the claim." *Id.* "If the averments in [the] filed claim meet this standard of sufficiency," the claim is prima facie valid. *Id.* (Internal citation omitted). Thus, "a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward" and the burden of going forward shifts to the objector. *Id.* The objector must then "produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.* "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Id.* (citing *In re WHET, Inc.,* 33 B.R. 424, 437 (Bankr.D.Mass. 1983)). The burden of persuasion always remains on the claimant. *Id.* (citation omitted).

██ As is the case with a motion to dismiss, in evaluating a motion to disallow a claim, the facts will be construed in a light most favorable to the non-movant. "On a motion to dismiss, this Court must accept the facts as alleged by [claimant]." *National Railroad Passenger Corp. v. New York City Housing Authority,* 819 F.Supp. 1271, 1275 (S.D.N.Y.1993); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1973, 167 L.Ed.2d 929, 949 (2007); *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir.2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 884

(2009) (*citing Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). Therefore, if claimant Housing Authority has pleaded facts that, if assumed to be true, would constitute a claim, then the motion to disallow that claim will be denied and issues of fact will be resolved by this Court after an evidentiary hearing has been held.

C. Given that the Applicable Statute of Limitations for Torts is Three Years under New York Law and that the Triggering Acts Occurred Prior to the Cut–Off Date, Any Claims that the Housing Authority May Have Had under a Tort Theory as Against Debtors, Including Negligence, Personal Injury, and/or Property Damage are Time–Barred

██ The parties agree that New York law applies. Under New York law, C.P.L.R. 214 provides for the statute of limitations for certain claims. C.P.L.R. § 214–c was created in 1986 to create a date of discovery statute of limitations specifically for toxic torts. *Germantown Central Sch. Dist. v. Clark, Clark, Millis & Gilson,* 100 N.Y.2d 202, 205, 761 N.Y.S.2d 141, 791 N.E.2d 398 (2003). C.P.L.R. 214–c(2) provides in pertinent part:

[T]he three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance … upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier"

C.P.L.R. 214–c(2), *Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson,* 294 A.D.2d 93, 96, 743 N.Y.S.2d 599 (N.Y.App. Div.2002), *aff'd, Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson, AIA,* 100 N.Y.2d 202, 761 N.Y.S.2d 141,

791 N.E.2d 398 (2003). The New York Court of Appeals summarized this rule as "result[ing] in the tolling for the statute of limitations until a party harmed by a toxic substance discovers or should have discovered the injury." *Germantown*, 100 N.Y.2d at 206, 761 N.Y.S.2d 141, 791 N.E.2d 398.

 This Court notes, however, that this section of the statute does not apply to every asbestos-related personal injury or property damage claimant. *Id., see also MRI Broadway Rental, Inc. v. United States Mineral Prods. Co.*, 92 N.Y.2d 421, 429, 681 N.Y.S.2d 783, 704 N.E.2d 550 (1998).[6] C.P.L.R. § 214–c does not apply to asbestos property damage claims where the Plaintiff was or should have been aware of the condition prior to July 1, 1986, *MRI Broadway*, 92 N.Y.2d at 429, 681 N.Y.S.2d 783, 704 N.E.2d 550, nor does it apply to claims "where the passage of time has produced no change in the consequences of the presence of asbestos—the injury cannot be said to have resulted from the latent effects of exposure" to asbestos. *Germantown*, 100 N.Y.2d at 206–207, 761 N.Y.S.2d 141, 791 N.E.2d 398. In the instant case, the Housing Authority does not allege an injury from the latent effects of exposure to a toxic substance, and based on the history of this matter set forth herein, as well as the widespread public awareness of the dangers of asbestos, the Housing Authority if not aware of the presence of VAT prior to July 1, 1986, should have been aware of the presence of VAT before January 5, 1998.

Here, as was the case in *Germantown* and *MRI*, we have an asbestos property damage claim that does not fall under the purview of C.P.L.R. 214–c. In such a case, the statute of limitations is provided by C.P.L.R. Section 214(4), which states:

> The following actions must be commenced within three years: . . .
>
> (4) an action to recover damages for an injury to property except as provided in section 214–c;

C.P.L.R. § 214(4) (McKinney 2008). In terms of when the statute of limitations begins to run for this type of claim, the answer is articulated by the Appellate Division in *Germantown*, citing the courts in the *MRI* and *W.R. Grace* cases:

> the injury or damage to plaintiff's property occurred and was complete when the asbestos was negligently left in the building, which immediately triggered the need to remove it, and no further or additional damage to the building (or to individuals) is alleged (citing *Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 628 (2d Cir.1993); *MRI Broadway Rental*, 242 A.D.2d 440 (N.Y.App.Div. 1997)).

*Germantown*, 294 A.D.2d at 96–97, 743 N.Y.S.2d 599. Accordingly, under C.P.L.R. § 214(4), the action accrues when the when the VAT was originally installed in the Housing Authority Buildings. Even the Housing Authority's counsel admitted

---

**6.** C.P.L.R. 214–c(6) provides that there is a limit on the discovery statute for cases where the injury should have been discovered prior to July 1, 1986:

[U]nder C.P.L.R. 214–c(6)(b), the discovery statute does not apply where the injury "either was discovered or through the exercise of reasonable diligence should have been discovered prior to" July 1, 1986. In this case, the primary condition on which the claim is based is the presence of asbestos in

the building. It cannot be contested that plaintiff was or should have been aware of this condition prior to July 1, 1986, and that there was widespread public awareness of the dangers of asbestos well before that date. Thus, plaintiff's claim does not fall within the savings provision of the discovery statute.

*MRI Broadway Rental, Inc. v. United States Mineral Prods. Co.*, 92 N.Y.2d 421, 429, 681 N.Y.S.2d 783, 704 N.E.2d 550 (1998).

to this Court at the July 22, 2009 hearing that its asbestos property damage tort claims are out of time: "[a]s to the pure tort claims those claims would be time barred." *See* Hr'g Tr. at p. 82. Based on all of the foregoing, the Housing Authority cannot collect under a tort theory.[7] To the extent that any of the Housing Authority's claim(s) are based in tort, the Debtors' motion to disallow is granted with respect to such claims as time barred.

D. The Applicable Statute of Limitations for Common Law Indemnification Based on Unjust Enrichment is Six Years under New York Law, and Accordingly, the Housing Authority's Indemnification Claim Must Survive this Motion to Disallow Because the Accrual Date of the Claim is An Issue Of Fact Which Remains to Be Determined

 The applicable state statute of limitations for indemnity actions arising out of claims for unjust enrichment is six years. *See* C.P.L.R. § 213(1)-(2) (McKinney 2008); *New York v. Hickey's Carting, Inc.*, 380 F.Supp.2d 108, 121 (E.D.N.Y. 2005), *Stewart's Ice Cream*, 64 N.Y.2d 83, 86, 484 N.Y.S.2d 810, 473 N.E.2d 1184 (1984); *Lead Industries III*, 222 A.D.2d at 129, 644 N.Y.S.2d 919; *Congregation Yetev Lev D'Satmar v. 26 Adar NB Corp.*, 192 A.D.2d 501, 503, 596 N.Y.S.2d 435 (N.Y.App.Div.1993). "Indemnification claims generally do not accrue for the purpose of the Statute of Limitations until the party seeking indemnification has made payment to the injured person." *McDer-*

*mott v. City of New York*, 50 N.Y.2d 211, 216, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980). "The statute of limitations begins to run when the plaintiff suffers the loss giving rise to the action for indemnity." *Hickey's Carting*, 380 F.Supp.2d at 121 (citing *Stewart's Ice Cream*, 64 N.Y.2d at 88–89, 484 N.Y.S.2d 810, 473 N.E.2d 1184); *McDermott*, 50 N.Y.2d at 219, 428 N.Y.S.2d 643, 406 N.E.2d 460. "[T]he triggering act would be [the Claimant's] expenditure of funds in connection with the remedial program." *New York v. Ackley*, 289 A.D.2d 812, 813, 734 N.Y.S.2d 722 (N.Y.App.Div.2001) (holding that an action for indemnity "shall be deemed to commence ... from the time that a payment was made from the Fund for cleanup and removal costs"); *see also Hickey's Carting*, 380 F.Supp.2d at 121; *Aldrich v. Marsh & McLennan Co., Inc.*, 2009 WL 3152794, *8 (N.Y.Sup.Ct. Sep. 29, 2009) (where plaintiff insurance companies stated that defendant insurance brokers had duty to produce accurate and truthful information regarding the risk in issuing original policies of reinsurance, claim for indemnification found to be separate cause of action that did not accrue until the party seeking indemnification pays for the injury); *but cf. American Home Assurance Co. v. Nausch, Hogan & Murray, Inc.*, 71 A.D.3d 550, 897 N.Y.S.2d 413 (N.Y.App.Div.2010) (Indemnity claim found appropriate where it was not a device to circumvent the statute of limitations).

Therefore, a six year statute of limitation would apply to the Housing Authority's equitable claim for indemnity.[8] This

---

7. Even if the proper statute of limitation for the tort claims were dictated by C.P.L.R. § 214–c here, these claims would still be time barred, because as the Debtors alleged and this Court finds, the Housing Authority knew or should have known of the dangers of asbestos in their buildings prior to the Cut–Off Date.

8. Debtors have argued that the indemnity and true restitution claims are nothing more than tort claims recast in equitable language in an effort to circumvent the statute of limitations.

Permitting plaintiffs to add these tort claims by recasting them in indemnification and restitution language would improperly circumvent the statute of limitations' bar on these claims (*see, City of New York v. Lead*

statute of limitations on a potential claim for indemnification on a certain payment would accrue on the date that the Housing Authority expended funds on the allegedly required abatement. The Housing Authority's counsel himself admitted to this Court at the July 22, 2009 hearing that all or at least a portion of their indemnification claims are probably out of time: "... [O]ne of the questions there is going to be if a claim occurred more than six years ... prior to the 2001 filing date, should that claim be time barred. My guess is it probably should." Hr'g Tr. at p. 91.

Debtors' Counsel urges this Court to review the Third Circuit Court of Appeals' decision in *Jeld–Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 121 (3d Cir.2010), with respect to the present case. In *Grossman*, the Third Circuit explicitly overruled the *Frenville* test, as set forth in *In re M. Frenville Co.*, 744 F.2d 332 (3d Cir.1984), for determining when a

claim arises.[9] This Court finds *Grossman* inapplicable to the present case for several reasons. In *Grossman*, the Court of Appeals addressed claims for personal injury torts in the context of a confirmed plan of reorganization where the claimant did not file a proof of claim before the confirmation; the Court determined whether such claims had been discharged by the confirmed plan. Here by contrast, the Housing Authority has pleaded a claim for indemnification, the proof of claim was filed before the Bar Date, and the claim was included in the Plan that was confirmed. This Court also notes that in *Grossman*, the Court of Appeals did not "decide when a claim arises in the context of an environmental cleanup case ..." *Grossman's Inc.*, 607 F.3d at 114, fn. 11.[10] The instant case arguably involves an environmental cleanup claim. For all of the foregoing reasons, this Court finds *Grossman* inapposite here.

*Indus. Ass'n*, supra at 126–127; *see also, MRI Broadway Rental v. United States Min. Prods. Co.*, 242 A.D.2d 440, 444–445, 662 N.Y.S.2d 114, *aff'd*, 92 N.Y.S.2d 421, 681 N.Y.S.2d 783, 704 N.E.2d 550).

*Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson*, 294 A.D.2d 93, 99, 743 N.Y.S.2d 599 (N.Y.App.Div.2002). At this juncture, the factual record is not sufficiently developed to allow this Court to determine whether the Housing Authority's equitable claims constitute anything more than "recast" tort claims. Therefore, this issue will not be addressed at present, but will be addressed at a later date after the factual record is more fully developed. Similarly, Debtors have argued that the all of the Housing Authority's equitable claims should be barred by the doctrine of laches. This Court will decline to make any determination with respect to laches until the record is more fully developed.

9. The Third Circuit in Grossman provided:
The *Frenville* court focused on the "right to payment" language in § 101(5) and, according to some courts, "impos[ed] too narrow an interpretation on the term claim," *Piper*, 58 F.3d at 1576 n. 2, by failing to give sufficient weight to the words modifying it: "contingent," "unmatured," and "unliqui-

dated." The accrual test in *Frenville* does not account for the fact that a "claim" can exist under the Code before a right to payment exists under state law. We are persuaded that the widespread criticism of *Frenville's* accrual test is justified, as it imposes too narrow an interpretation of a "claim" under the Bankruptcy Code. Accordingly, the *Frenville* accrual test should be and now is overruled.
*Jeld–Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 121 (3d Cir.2010).

10. Footnote 11 states:
Because we have before us an asbestos case, we do not decide when a "claim" arises in the context of an environmental cleanup case involving conflicting statutory frameworks. *See In re Jensen*, 995 F.2d at 930; *In re Chateaugay*, 944 F.2d at 1004–05; *see also, Matter of Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 974 F.2d 775, 781 (7th Cir.1992) ("[T]he determination of when a party has a claim ... seems to hinge on the nature of the claim and the posture of the case.")
*Jeld–Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 126 (3d Cir.2010).

The dates that the expenditures were made and the quantum of funds expended by the Housing Authority are among the issues of fact that cannot be resolved by this Court until the parties present additional proofs and the record before this Court is further developed at an evidentiary hearing. At this juncture, Debtors' motion to disallow the Housing Authority's claim(s) which are based on common law indemnity as time-barred is premature, and accordingly, it is denied. The Housing Authority will have an opportunity to present further proofs with respect to these issues of fact.

E. The Claims for Common Law Indemnification will Survive this Motion to Dismiss Because the Movant has Alleged Facts that if True Would Give Rise to Such Claim

 The principles of Indemnity under New York Law have been described by the New York Court of Appeals:

It is a well-settled principle that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity,' citing Restatement of Restitution, § 76; and *McDermott v. City of New York*, 50 N.Y.2d 211, 217, 428 N.Y.S.2d 643, 406 N.E.2d 460.

*Stewart's Ice Cream Co.*, 64 N.Y.2d 83, 88, 484 N.Y.S.2d 810, 473 N.E.2d 1184 (1984). "The right to indemnity ... is not dependent upon the legislative will. It springs from a contract, express or implied, and full, not partial, reimbursement is sought." *McDermott v. City of New York*, 50 N.Y.2d 211, 216, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980). As defined in the New York Supreme Court:

"There are two categories of indemnity—contractual ... and common-law." (citing *City of New York v. College Point Sports Ass'n*, 61 A.D.3d 33, 876 N.Y.S.2d

409 (N.Y.App.Div.2009)). Common law indemnification has been defined as "nothing short of simple fairness to recognize that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled [by equity] to indemnity' " *Id.* (citing *McDermott v. City of New York*, 50 N.Y.2d 211, 217, 406 N.E.2d 460, 428 N.Y.S.2d 643 (1980) (quoting Restatement [First] of Restitution § 76)).

*Nelson v. Jereissati*, 2009 WL 453219, *7 (N.Y.Sup.Ct. Feb. 10, 2009). The required elements and duties were further detailed in *Lead Industries III*:

The gravamen of an action for indemnity is that both parties, indemnitor and indemnitee, are subject to a duty to a third person under such circumstances that one of them, as between themselves, should perform it rather than the other, *citing* (Restatement of Restitution § 76, comment b at 331–332). The classic situation giving rise to a claim for indemnity is where one, without fault on its own part, is held liable to a third party by operation of law ... due to the fault of another. It is the independent duty which the wrongdoer owes to prevent the other from becoming vicariously liable, and cast in damages, to the injured party that is the predicate for the indemnity action ... and it is not necessary that the indemnitee establish that the indemnitor ever has owed, or currently owes, it a separate duty apart from the duty to indemnify.

*Lead Industries III*, 222 A.D.2d at 125, 644 N.Y.S.2d 919. "An owner can seek indemnity for asbestos clean-up from a party wholly responsible for the wrongdoing." *Chemical Bank v. Stahl*, 237 A.D.2d 231, 232, 655 N.Y.S.2d 24 (N.Y.App.Div. 1997) (citing *City of New York v. Keene Corp.*, 132 Misc.2d 745, 505 N.Y.S.2d 782,

*aff'd*, 129 A.D.2d 1019, 513 N.Y.S.2d 1004 (N.Y.App.Div.1987)).

 In evaluating this motion to disallow a claim, this Court must accept the facts as alleged by Claimant. Here, the Housing Authority has plead that VAT is inherently dangerous to tenants, that Debtors are responsible for the wrongdoing, that the dangers of VAT gave rise to a duty to abate VAT in the interests of public safety, that the Housing Authority has borne the costs of the abatement, and that the cost of the abatement should have been borne by the Debtors. Assuming the veracity of all of these facts at this stage, the Housing Authority has stated a claim for indemnity that will survive this motion to disallow the claim. The actual dangers of VAT and the urgency of the public health risk, the dates that expenditures were made by the Housing Authority, the required duties of the Housing Authority and Debtors to tenants, and the reasonable quantum of abatement costs that should have been borne by Debtors are all issues of fact that cannot be resolved by this Court until there is a more developed factual record. At this juncture, Debtors' motion to disallow the Housing Authority's common law indemnification claim because it fails to state a claim on which relief may be granted is premature, and accordingly, it is denied. The Housing Authority will have an opportunity to present further proofs with respect to the issues of fact.

F. The Applicable Statute of Limitations for Common Law True Restitution Based on Unjust Enrichment Is Six Years Under New York Law, and Accordingly, the Housing Authority's True Restitution Claim Must Survive this Motion to Disallow as Time–Barred Because the Accrual Date is an Issue of Fact Which This Court Must Determine

 The applicable state statute of limitations for restitution actions arising out of claims for unjust enrichment is six years. *See* C.P.L.R. § 213(1)–(2) (McKinney 2008); *Hickey's Carting*, 380 F.Supp.2d at 121; *Stewart's Ice Cream*, 64 N.Y.2d at 88, 484 N.Y.S.2d 810, 473 N.E.2d 1184; *Lead Industries III*, 222 A.D.2d at 129, 644 N.Y.S.2d 919; *Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.*, 192 A.D.2d 501, 503, 596 N.Y.S.2d 435 (N.Y.App.Div.1993).

> The statute of limitations begins to run ... in the case of an action for restitution, upon the occurrence of the wrongful act giving rise to the duty to repay; citing *Congregation Yetev Lev D'Satmar*, 192 A.D.2d at 503, 596 N.Y.S.2d 435 ... The triggering act would be the State's expenditure of funds in connection with the remedial program.

*New York v. Hickey's Carting, Inc.*, 380 F.Supp.2d at 121 (E.D.N.Y.2005). Therefore, a six year statute of limitation would apply to the Housing Authority's equitable claim for true restitution. This statute of limitations on a potential claim for true restitution on a certain payment would accrue on the date that the Housing Authority expended funds on the allegedly required abatement. The dates that expenditures were made by the Housing Authority, and quantum of funds expended by the Housing Authority, are among the issues of fact that cannot be resolved by this Court until there is a more developed factual record. At this juncture, Debtors' motion to disallow the Housing Authority's common law claim for true restitution on the basis that it is time barred is premature; the motion is denied. The Housing Authority will have an opportunity to present further proofs with respect to these issues of fact.

G. The Claims for Common Law True Restitution Will Survive this Motion to Dismiss Because the Movant has Alleged Facts that if True Would Give Rise to Such Claim

██ True Restitution, under New York law, is defined as:

"A person who has performed the duty of another, by supplying things or services, although acting without the other's knowledge or consent, is entitled to restitution from the other if (a) he acted unofficiously and with intent to charge therefore, and (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety." *City of New York v. Keene Corp.*, 132 Misc.2d 745, 505 N.Y.S.2d 782, 784 (N.Y.Sup.Ct.1986) (*quoting* Restatement of Law, Restitution § 76, 115); *see also New York v. Schenectady Chems., Inc.*, 103 A.D.2d 33, 479 N.Y.S.2d 1010 (N.Y.App.Div. 1984); *State v. Stewart's Ice Cream*, 64 N.Y.2d 83, 484 N.Y.S.2d 810, 473 N.E.2d 1184 (1984).

*National R.R. Passenger Corp. v. New York City Hous. Auth.*, 819 F.Supp. 1271, 1279–1280 (S.D.N.Y.1993). "A restitution cause of action ... require[s] an *allegation* that the act performed was 'immediately necessary to satisfy the requirements of public ... health, or safety.'" *City of New York v. Keene Corp.*, 132 Misc.2d 745, 751, 505 N.Y.S.2d 782 (N.Y.Sup.Ct.1986) (citing Restatement of Restitution § 115). Restitution claims "are, however 'limited to the reasonable costs for abatement, not necessarily the amount expended, and [do] not extend to future costs.'"); *see also State of New York v. Schenectady Chems.*, 103 A.D.2d 33, 39, 479 N.Y.S.2d 1010 (N.Y.App.Div.1984). Therefore, any claims brought in the instant case as true restitution claim(s) for expenditures related to the remediation of asbestos-related property damage must be evidenced properly, and such expenditures are subject to a reasonableness determination by this Court.

██ In order to establish a true restitution claim, the indemnitee need not provide advanced notice to the indemnitor before taking action in the interests of public health, but the claimant must establish that it had a duty to act:

In order to maintain a cause of action for common law restitution, a plaintiff must allege that it performed the defendants' duty by supplying things or services that 'were immediately necessary to satisfy the requirements of public decency, health or safety.'

*Hickey's Carting*, 380 F.Supp.2d at 121 (citing *Lead Industries III*, 222 A.D.2d at 125, 644 N.Y.S.2d 919).

Reading § 115 of the Restatement in its logical construction leads to the conclusion that a party acting without another party's consent or knowledge need not necessarily expressly advise the other party of an intent to charge for services supplied. This becomes readily apparent when, as here, the services of the plaintiffs were necessary for public health and safety requirements, and where it is fair to presume that the expression of a specific intent to seek restitution from the defendants would have met with no response.

*Lead Industries I*, 1991 WL 284454, *7 (N.Y.Sup.Ct. Dec. 23, 1991). "There is a distinction between those situations where a party acts for humanitarian purposes in rendering insignificant or voluntary services and services rendered because of a compelling public need." *Id.* This was later reinforced in *Lead Industries III*:

[Unlike a claim for indemnity, a] plaintiff seeking restitution need not have been under a duty to perform that for which restitution is sought but, rather, that such party because there was an imme-

diate necessity to protect "public decency, health or safety", took action to fulfill a duty actually owed by the defendant restitutor. While traditionally, it was necessary that plaintiff have acted voluntarily, it has been held that it is not fatal to a cause of action for restitution that the plaintiff may also have had a statutory duty to act.

*Lead Industries III*, 222 A.D.2d at 125–126, citing *Lead Industries II*, 190 A.D.2d 173, 597 N.Y.S.2d 698. In other words, to maintain a claim for restitution in this case, the Housing Authority need not prove that it provided Debtors with notice of its intent to charge for the abatement work, but it must establish that it had an underlying duty to tenants to perform this work (as opposed to if the abatement work performed was insignificant or voluntarily performed for altruistic reasons).

█ In evaluating this motion to disallow a claim, this Court must accept the facts as alleged by Claimant. Here, the Housing Authority alleges that VAT is inherently dangerous to tenants, that Debtors are the source of the VAT, that the dangers of VAT gave rise to a duty to abate VAT in the interests of public safety, that the Housing Authority has borne the costs of the abatement, and that the cost of the abatement should have been borne by the Debtors instead. Assuming the veracity of all of these facts at this stage, the Housing Authority has stated a claim for true restitution that will survive this motion to disallow. The actual dangers of VAT and the urgency of the public health risk, the dates that expenditures were made by the Housing Authority, the required duties of the Housing Authority and Debtors to tenants, and the reasonable quantum of abatement costs that should

have been borne by Debtors are all issues of fact that cannot be resolved by this Court until the factual record is developed fully. At this juncture, Debtors' motion to disallow the Housing Authority's common law true restitution claim on the basis that it fails to state a claim on which relief may be granted is premature; accordingly, the motion is denied. The Housing Authority will have an opportunity to organize and to present further proofs with respect to these issues of material fact.[11]

### CONCLUSION

For the foregoing reasons, the Debtors' motion is granted in part and denied in part. An order shall be submitted in conformance with this decision.

**11.** At the July 22, 2009 Hearing, the Housing Authority's counsel raised the issue of whether the matter should be remanded to New York state courts pursuant to 28 U.S.C. § 1452. As no motion to remand is before the Court, this opinion does not address such issue. Hr'g Tr. at p. 96.